**Michael Charles FULLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–06–00008–CR.

Court of Appeals of Texas, Texarkana.

Submitted March 28, 2007.

Decided May 15, 2007.

Judy Hodgkiss, The Moore Law Firm, LLP, Paris, for appellant.

Gary D. Young, Lamar County & Dist. Atty., Deborah Moore, Asst. County Atty., Paris, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice CARTER.

A jury convicted Michael Charles Fuller of one count of sexual assault of a child and two counts of indecency with a child, namely, J.W., his girlfriend Connie Moore's then-fifteen-year-old daughter. The jury assessed punishment at eight years', five years', and five years' confinement, respectively, and the trial court sentenced Fuller to those terms, to run concurrently. Fuller raises nine issues on appeal.

## I. Speech Trial

In issues eight and nine, Fuller asserts speedy trial violations. Over four years elapsed between the filing of the indictment and Fuller's trial.

Extended governmental delay in prosecuting entitles a defendant to relief based on the right to a speedy trial. *See Doggett v. United States,* 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). If a violation of the speedy trial right is established, the only possible remedy is dismissal of the prosecution. *Strunk v. United States,* 412 U.S. 434, 440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). In determining whether an accused has been denied his or her right to a speedy trial, a court must use a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The factors to be weighed in the balance include, but are not necessarily limited to, (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his or her speedy trial right, and (4) the prejudice to the defendant resulting from the delay. *See id.* No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. *Id.* at 533, 92 S.Ct. 2182; *Dragoo v. State,* 96 S.W.3d 308, 313 (Tex. Crim.App.2003). However, if the defendant fails entirely to raise the speedy trial issue "at or prior to trial" and only raises the issue on appeal, the defendant does not preserve the error for review. *Wade v. State,* 83 S.W.3d 835, 838 (Tex.App.-Texarkana 2002, no pet.).

Fuller never raised the speedy trial issue—by requesting a trial date or by seeking dismissal of the case—until after the trial was concluded.[1] Fuller waived any

---

1. Fuller was incarcerated from December 2001 to April 2002 and then again from May 2005 through trial in December 2005. On October 4, 2005, with still no trial setting, Fuller wrote a letter from jail to the judge requesting release on personal recognizance because the "state was not ready" and "this case is forty-five months old and since my jury trial was passed over again." Indeed, in the letter, while Fuller dances around the issue of the lengthy delay, he ultimately seeks only one remedy: release from custody. He never asks for trial, and he never asks that the

speedy trial violation by not objecting at or prior to trial, and we may not consider the issue for the first time on appeal. Accordingly, these points of error are overruled.

## II. Legal Sufficiency

In issue five, Fuller asserts that the evidence was legally insufficient to support the sexual assault conviction. As indicted and charged in count three, the State had to prove that Fuller intentionally or knowingly caused J.W.'s sexual organ to contact Fuller's mouth. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(C) (Vernon Supp.2006).[2]

### A. Standard of Review

■ In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim.App.1999). We are required to "defer to the jury's credibility and weight determinations" in our legal sufficiency review. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App.2006).

### B. Discussion

■ J.W. testified that, when she was about fifteen years old, she and Fuller, who was dating J.W.'s mother and living with the family, "were watching TV as usual, and he just started the oral sex." On another occasion in her testimony, J.W. stated that "[t]he oral sex happened."

When the State asked J.W. to specify the acts involved, J.W. testified, "He got on top of me and he was pulling my shorts down, and I'm trying to get him off of me, but he wouldn't move. I couldn't move him. And he started the oral sex." As further evidence, the State introduced, over defense objection, a letter in which J.W. wrote that Fuller pulled her panties down and "began licking rough."

Fuller testified in his defense and denied having oral sex with J.W. Fuller also produced two witnesses who testified that J.W. had "said nothing happened" and had "said that she would do whatever she could to get [Fuller] away from her mother." We defer to the jury's credibility and weight determinations, implicit in the verdict, that J.W.'s story was credible despite the testimony of Fuller and other defense witnesses. *See id.*

Still, Fuller asserts that J.W.'s testimony is too vague to constitute legally sufficient evidence because the term "oral sex" could just as easily reference contact between J.W.'s mouth and Fuller's genitals, which would be contact not charged. However, the jury was entitled to make reasonable inferences from the evidence. *See Hooper v. State*, 214 S.W.3d 9 (Tex. Crim.App.2007). The inference that Fuller's was the active mouth rises from combining J.W.'s testimony about oral sex with the letter referencing Fuller's "rough licking" and is more than reasonable.

Additionally, Fuller contends that, even if the inference is made that it was his mouth to her body, the State never defined what J.W. meant by "oral sex" so as to include the required element of contact to her sexual organ. In other words, J.W.

case be dismissed. Neither did Fuller's trial counsel raise the issue.

2. Although the sexual assault statute has been amended several times since Fuller was in-

dicted in November 2001 for acts alleged to have occurred on or about May 1, 2001, no changes have been made to the subsection relevant to this appeal.

could understand that "oral sex" means "kissing" or that Fuller's mouth touched J.W.'s anus, thigh, or some other nonsexual organ part. We find that the jury could reasonably infer that J.W.'s use of the term "oral sex" was consistent with its common and plain meaning. "Oral sex" is "oral stimulation of the genitals." Merriam–Webster's Collegiate Dictionary 872 (11th ed.2006) (referring also to two synonymous entries: "cunnilingus" and "fellatio"); see also Donoho v. State, 643 S.W.2d 698, 700 (Tex.Crim.App.1982) (oral sex denotes contact between mouth and naked genitals); Gagliardo v. State, 78 S.W.3d 469, 475 (Tex.App.-Tyler 2001, pet. ref'd) ("reciprocal oral sex" legally sufficient). J.W.'s testimony serves as sufficient evidence of contact between mouth and genitals.

We find, on a review of the full record, and viewing all of the evidence in the light most favorable to the verdict, that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The evidence is legally sufficient; the point of error is overruled.

## III. Ineffective Assistance of Counsel

In issues one and two, Fuller claims ineffective assistance of counsel pervaded the entire defense, discussing numerous discrete examples, and urges that we reverse and remand for a new trial.

### A. Standard of Review

The standard of testing claims of ineffective assistance of counsel is set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in Hernandez v. State, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail on this claim, an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the

defense. Strickland, 466 U.S. at 689, 104 S.Ct. 2052; Rosales v. State, 4 S.W.3d 228, 231 (Tex.Crim.App.1999). To meet the burden on the first prong, the appellant must prove by a preponderance of the evidence that the attorney's representation objectively fell below the standard of prevailing professional norms; to meet the burden on the second prong, the appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Crim.App.2002).

In determining if counsel's performance was deficient, our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. Strickland, 466 U.S. at 689, 104 S.Ct. 2052; Tong v. State, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). In the absence of direct evidence of counsel's reasons for the challenged conduct, we will assume a strategic motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436, 440 (Tex.Crim.App.2001). A full inquiry into the strategy or tactics of counsel should be made only if, from all appearances after trial, there is no plausible basis in strategy or tactics for counsel's actions. See Johnson v. State, 614 S.W.2d 148, 152 (Tex.Crim.App. [Panel Op.] 1981); Ex parte Burns, 601 S.W.2d 370, 372 (Tex. Crim.App.1980); Stenson v. State, 695 S.W.2d 569, 571 (Tex.App.-Dallas 1984, no pet.).

When, as here, ineffective assistance is raised on direct appeal, appellate

counsel and the court must proceed on a trial record not developed for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.[3] *Freeman v. State*, 125 S.W.3d 505, 506 (Tex.Crim.App.2003); *cf. Massaro v. United States*, 538 U.S. 500, 504–05, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). Nonetheless, some claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." *Massaro*, 538 U.S. at 508, 123 S.Ct. 1690; *Freeman*, 125 S.W.3d at 506; *see also Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim.App.2005); *Thompson*, 9 S.W.3d at 814 n. 6. "[W]hen no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did." *Andrews*, 159 S.W.3d at 102. A claim of ineffective assistance of counsel, on an undeveloped record on direct appeal, should, nonetheless, "be entertained and upheld if supported by the record." *Oldham v. State*, 977 S.W.2d 354, 360 (Tex. Crim.App.1998).

## B. Discussion

### 1. General Evidentiary Matters (Hearsay, Leading, Relevancy, Sidebar Comments, Badgering)

Fuller complains his counsel was ineffective in not objecting to the State's repeated badgering of and sidebar comments about Fuller. Fuller testified in his defense at both the guilt/innocence and punishment phases of the trial. Fuller's counsel made no objections in this lengthy exchange during the State's cross-examination of Fuller:

Q. [by the State] You take [J.W.] other places by herself?

A. [by Fuller] Yes.

Q. Like where?

A. To her boyfriends.

Q. You did that without her mom. *You've been dying to say this, by the way. You've been trying to say that since you hit the witness stand. All right. So you took—let's go—let's get it out in the air.* Connie did not like [J.W.]'s boyfriend?

A. No.

Q. She didn't want her to see him?

A. No.

Q. You would help [J.W.] get out of the house and go see the boyfriend. Is that right?

A. That's right.

Q. You allowed her to go do something her mom would not approve of; is that right?

A. Her mom—her mom—

Q. Yes or no. *Mr. Fuller, you've been dying to trash [J.W.] since you walked in this courtroom. I gave you your chance. You said it. Now, let's talk about the truth. All right.* You allowed [J.W.] to do stuff her mother would not approve of. Yes or no?

A. No.

---

**3.** Fuller did file a pro se motion for new trial to develop evidence on the ineffective assistance of counsel claim. His first court-appointed appellate attorney requested a hearing on the motion, but the court scheduled the hearing for a date four days after the last date on which such a hearing must be held. *See State ex rel. Cobb v. Godfrey*, 739 S.W.2d 47, 48–49 (Tex.Crim.App.1987). Counsel did not object. Counsel later withdrew for unrelated reasons, and the court appointed Fuller a second appellate counsel shortly before the scheduled hearing. When this second counsel applied for a bench warrant to deliver Fuller to the hearing, the court noted that the motion for new trial had been overruled by operation of law. No hearing was ever held.

Q. You didn't take her to see her boy-friend—

A. I took her to see her boyfriend.

Q.—when Connie would not approve it? Did you tell Connie?

A. Connie said she didn't care.

Q. Oh, she didn't care. So why was it such a big deal for you to tell this jury all day? *You've been dying since 1:30 to tell this jury that you snuck her out of the house to see her boyfriend. If it wasn't such a big deal, why have you been dying to say it?*

A. *To tell the truth.*

Q. *Which you have never done a day in your life?*

(Emphasis added.) Fuller asserts that not only was an objection required here, but that this questioning was so calculated to inflame the jury that a mistrial was in order. While the State's conduct here is objectionable, on the record on direct appeal it is difficult to find that Fuller has met his burden. Although counsel's reasons for not objecting do not appear in the record on direct appeal, his conduct could have been part of a plausible trial strategy to avoid emphasizing the matter to the jury or avoid having the jurors believe that Fuller was hiding something from them.

Fuller also asserts that counsel was ineffective by failing to object to the State's "badgering" of Fuller for his alleged failure to advise the State of exculpatory evidence. The prosecutor noted that "[i]t's only on the day of trial that these people [defense witnesses] show up" and that none of the defense witnesses had talked to the State in the past four years, and asked Fuller: "don't you think it would be important to turn it [his defense theory] over to the state?" Fuller frames the issue as the State's comments on Fuller's post-arrest silence, citing *Bhakta v. State,* 981 S.W.2d 293 (Tex.App.-San Antonio 1998, pet. ref'd), and *Nixon v. State,* 940

S.W.2d 687 (Tex.App.-El Paso 1996, pet. ref'd). These cases are distinguishable from Fuller's cited authority. *Bhakta* reversed a judgment in which the prosecutor attempted to impeach the defendant's trial testimony by asserting, during closing arguments, that the defendant should have given a statement in his defense to the officers on the scene at his arrest. *Bhakta,* 981 S.W.2d at 295. The *Nixon* case also involved the State's attempt to impeach the defendant's credibility by noting the defendant had failed to give a written custodial statement. *Nixon,* 940 S.W.2d at 692. The prosecutor here did not exclusively reference custodial situations, but referenced the entire four-year period between Fuller's arrest and trial. Moreover, the State questioned not Fuller's own silence, but Fuller's defense witnesses' silence during that period. Thus, although the State's questioning may be objectionable, it may be objectionable by implying defense misconduct (i.e., implying Fuller did not comply with some duty to disclose evidence) rather than by implicating Fuller's own post-arrest silence. Since the State did not comment on Fuller's own post-arrest silence, Fuller's counsel had no reason to object on that basis, and Fuller has failed to meet his burden under the first prong.

Fuller further asserts that counsel was ineffective by (1) not objecting to J.W.'s hearsay testimony that she had "heard about [Fuller] through friends, and it just wasn't a good reputation that he had through the public" and that she "heard" from a friend at school that Fuller was cheating on her mother; (2) not objecting to the State's use of leading questions in the direct examination of several of the State's witnesses; and (3) not objecting to the State's improper impeachment of defense witness Wallace through an "onslaught of attack," which included hostile

and rude questions regarding Wallace's child visitation and support payment history (both good), and misdemeanor convictions for marihuana possession, criminal mischief, and assault. Counsel's reasons for not objecting do not appear in the record on direct appeal, and his conduct could have been part of a plausible trial strategy—e.g., to not draw the jury's attention to the matters, to not give the jury the impression that witnesses had something to hide, or to not appear to the jury to be trying the case on technicalities. Because we can imagine plausible trial strategies for counsel's choices, Fuller has failed to rebut the presumption of competence on this complaint as presented on direct appeal.

Additionally, Fuller complains his counsel failed to object to hearsay testimony from police officer Lee Foreman regarding Fuller's alleged commission of an extraneous offense. Foreman testified that, in connection with the earlier offense, he had arrested Fuller pursuant to a warrant and participated in the investigation by recovering a shell casing. We disagree that the complained-of testimony was clearly hearsay and, thus, Fuller's counsel did not fall below an objective standard of reasonableness for not objecting.

## 2. Failure to Object to Jury Acquittal as "Extraneous Offense" or "Bad Act"

■ Fuller complains of a more glaring deficiency at the punishment phase of the trial. Fuller's counsel failed to object to the introduction, through several witnesses, of evidence that Fuller was actually guilty of possessing drugs in 1992, even though Fuller had been acquitted of that charge by a jury. In fact, much of the punishment phase of Fuller's trial was focused on relitigating this earlier offense.

■ The Fifth Amendment guarantee against double jeopardy contains a collateral estoppel rule which provides that, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *see also* U.S. Const. amend. V. The precluded issue must be the same as that determined in the prior proceeding. *See Ex parte Taylor*, 101 S.W.3d 434, 441–42 (Tex.Crim.App.2002). There are "no hard and fast rules concerning which factual issues are legally identical and thus barred from relitigation in a second criminal proceeding. As Professor Wright concludes: 'If an ordinary person would expostulate, "But that's a different issue," probably it is.'" *Id.* at 442 (citing 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4417 (2d ed.2000)).

The State elicited testimony regarding Fuller's actual possession of the drugs—with no objections from Fuller's counsel—from Connie (who testified that Fuller had boasted he "got off" or had beaten the rap by flushing the drugs down a toilet); from arresting officer Shane Boatwright (who testified to hearsay from another officer and Connie that Fuller had drugs on him that night in 1992); from investigating officer Tim Moree (who testified to the large amount of drugs found at the time of Fuller's 1992 arrest); and from officer Lee Foreman (who identified substances in photographs from the 1992 offense as crack cocaine and testified to the street value of Fuller's alleged drugs, although he was not an officer in 1992 and did not become a narcotics officer until 2000). Additionally, Fuller's counsel did not object to the State's cross-examination of Fuller, during the punishment phase, about the 1992 drug arrest of which he was acquitted. The State urged the jury to reject

community supervision now because Fuller had already "skated by off that drug case ... he got by with it." The jury was given the instruction that it may only consider extraneous offense evidence if it believed beyond a reasonable doubt that Fuller committed the offense or bad act.

■ While the State's actions *suggest* a double jeopardy collateral estoppel rule violation, the record presented on direct appeal does not contain the record of the prior proceeding. In order to apply the collateral estoppel rule to preclude relitigation of the same issue, appellate courts "must examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matters to determine whether a rational fact finder could have grounded its decision on" a different fact. *Doty v. State*, No. 03–03–00668–CR, 2005 WL 1240697, at *4 (Tex.App.-Austin May 26, 2005) (mem. op., not designated for publication), *pet. dism'd, improvidently granted*, No. PD–1159–05 (Tex.Crim.App. March 21, 2007), *available at* http://www.cca.courts.state.tx. us/ opinions/HTMLOpinionInfo.asp?OpinionID=15160. Because we have no record of the earlier proceeding, the record as presented on this direct appeal does not allow a finding that the admission of this evidence was objectionable. Accordingly, Fuller has not met his burden that counsel had no plausible strategy in not objecting.

### 3. Testimony of Complainant's Truthfulness

Fuller asserts counsel was ineffective by not objecting to the State's "bolstering" of J.W.'s truthfulness and credibility through both experts and lay witnesses. Indeed, the State called, in addition to J.W., only four witnesses, each of whom testified, in some manner, that J.W. was telling the truth. Three of these witnesses testified to the specific truthfulness and credibility

of J.W.'s allegations. On a review of the applicable authority, and the details of the testimony to which Fuller's counsel failed to object, we find that this is one of those rare cases in which the record on direct appeal is sufficient to decide counsel had no plausible trial strategy for not objecting to the inadmissible testimony and that his conduct was deficient. *See Andrews*, 159 S.W.3d at 103.

#### a. *Applicable Law*

■ "[E]xpert testimony that a particular witness is truthful is inadmissible under Rule 702." *Yount v. State*, 872 S.W.2d 706, 711 (Tex.Crim.App.1993). An expert may not offer a direct opinion on the truthfulness of a child complainant's allegations. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex.Crim.App.1997). Moreover, an expert is not permitted to give an opinion that the complainant or class of persons to which the complainant belongs (such as child sexual assault victims) is truthful. *Yount*, 872 S.W.2d at 712; *cf. Schutz*, 957 S.W.2d at 70 (testimony about children's *ability* to accurately perceive or remember is allowable, but not a particular child's *tendency* to do these things). This is because experts on child sexual abuse "are not human lie detectors. Nor are they clairvoyant." *Yount*, 872 S.W.2d at 710 (quoting John E.B. Meyers et al., *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L.Rev. 1, 121 (1989)). Instead of experts, it is jurors who must draw "conclusions concerning the credibility of the parties in issue." *Yount*, 872 S.W.2d at 710. The Texas Court of Criminal Appeals found that "[v]irtually every jurisdiction which has addressed, in the context of a child sexual assault case, the admissibility of direct testimony as to the truthfulness of the child complainant, has held that such direct testimony is inadmissible." *Id.* at 711 n. 8 (citations omitted).

Moreover, the defense does not "open the door" to otherwise inadmissible expert opinion testimony on the truthfulness of a complainant's allegations by cross-examining the complainant herself or the complainant's mother. *See Schutz*, 957 S.W.2d at 72.

Nonexpert testimony may be offered to support the credibility of a witness in the form of opinion or reputation, but "the evidence may refer only to character for truthfulness or untruthfulness." Tex.R. Evid. 608(a)(1). A lay witness may not, under Rule 608, testify to the complainant's truthfulness in the particular allegations. *See Schutz*, 957 S.W.2d at 72. Further, evidence of truthful character may only be offered "after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." Tex.R. Evid. 608(a)(2).

### b. *The Teacher's Testimony*

■ The State, in its case-in-chief, introduced lay opinion testimony from J.W.'s eighth-grade science teacher (now the high school principal) that, generally, J.W. is a credible and truthful person. The teacher also, however, testified that he has "a feel" for the students, that he is usually right in his feelings and impressions, that he knows who is credible and who is not, and that J.W. is credible.

Assuming, without deciding, that this testimony did not exceed the bounds of acceptable evidence of truthful character under Rule 608, the testimony would have been admissible only after J.W.'s character for truthfulness had been attacked. *See* Tex.R. Evid. 608(a); *see also Schutz*, 957 S.W.2d at 76. The State, however, introduced this testimony not in rebuttal, but in its case-in-chief. The State asserts that Fuller "attempted" to impeach J.W. while cross-examining her. The State does not assert that this "attempt" was successful; indeed, the record indicates that, on being asked if she had given a different account of her allegations to others, J.W. denied ever giving an earlier inconsistent account. Allowing the State to pre-emptively "rebut," through lay opinion testimony, attacks on its complaining witnesses solely on the basis of the cross-examination of that witness is inconsistent with the *Schutz* finding that the defense does not "open the door" for the same testimony by an expert by cross-examining the complainant herself. *See Schutz*, 957 S.W.2d at 72.

■ The State further asserts that, since Fuller denied the accusations in voir dire and his opening statement, J.W.'s credibility was attacked from the start so as to allow rebuttal evidence bolstering J.W.'s credibility during the State's case-in-chief. However, a defensive theory of fabrication (as opposed to recent fabrication) which generally denies the charges against a defendant is not the equivalent of an attack on the victim's general character for truthfulness so as to warrant the admission of character testimony. *Cf. Stitt v. State*, 102 S.W.3d 845, 848 (Tex.App.-Texarkana 2003, pet. ref'd). The State points us to no testimony indicating that, at the time of the teacher's testimony, Fuller had impeached J.W. by any means. As such, the teacher's testimony did "bolster" J.W., without objection from Fuller's counsel.

### c. *Connie's Testimony*

■ Fuller claims counsel was ineffective for not objecting to the State's bolstering of J.W.'s truthfulness and testimony through her mother, Connie. The State asked Connie several times if she believed J.W.'s allegations to be true, and Connie testified that she believed J.W. and her allegations. During direct examination of Connie, the State's second witness (after J.W. herself), the State asked:

Q. As you sit here now, do you believe your daughter?

A. Yes, I do.

The State, on redirect, asked:

Q. Having heard all the evidence, you know, heard what [J.W.] had to say, what she told the police, having heard the defendant's excuses for his conduct, do you believe it happened?

A. Yes, I do.

This testimony, as sought by the State, goes to the truth of the specific allegations and is expressly inadmissible. *See Schutz,* 957 S.W.2d at 76.

### d. *Huff's Testimony*

After presenting Lieutenant Danny Huff as an expert in child sexual assault investigations, the State asked Huff:

Q. [by the State] Do you issue arrest warrants when you don't believe them to be true?

A. [by Huff] No.

Q. Because you have reasonable suspicion, is that all you had?

A. I'm sorry?

Q. Do you end your investigation at reasonable suspicion or do you have a stronger belief?

A. Yeah, we have a—we have—I'm not sure exactly the words you say, but we're very comfortable with the evidence that we have, the information that we have to proceed to an arrest.

Q. Okay. The legal burden is reasonable suspicion?

A. Right.

Q. That doesn't mean that's all you have?

A. No.

Q. *And in this case is that all you had was a reasonable suspicion?*

A. No, not really.

Q. *Did you have beyond a reasonable doubt?*

A. *I felt we did. I felt that we did.*

(Emphasis added.) The prosecutor later continued this line of questioning:

Q. [by the State] *Did you make a determination whether [J.W.] was credible prior to filing the arrest warrant?*

A. [by Huff] *I did.*

Q. *Did you find her credible?*

A. Yes, sir.

Q. Would you have filed it if you did not find her to be credible?

A. No, sir.

(Emphasis added.) In closing arguments, the prosecutor reminded the jury that Huff had found J.W. credible and he "believed her beyond a reasonable doubt."

The State asserts Huff's testimony was not objectionable since Huff only testified to the "process of conducting an investigation" into J.W.'s allegations, not into the truth of J.W.'s allegations. The State calls Huff's testimony regarding J.W.'s credibility "foundational and procedural" in the explanation of describing the process of his investigation and determination of reasonable suspicion against Fuller. In support, the State cites *Martinez v. State,* 186 S.W.3d 59, 66 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd), and *Dinkins v. State,* 894 S.W.2d 330, 347 (Tex.Crim.App. 1995). These cases analyze police officers' testimony about how the officers came to suspect the accused, not for the truth of the accusations against the accused. The situation here is distinguishable. First, the identity of the alleged perpetrator was never in question. Second, while Huff did testify to investigation procedure, the State also elicited from Huff testimony about the truthfulness of J.W.'s allegations. This is inadmissible. *See Schutz,* 957 S.W.2d at 76.

### e. *Hunt's Testimony*

■ Similarly, Fuller's counsel did not object to testimony by Stephanie Hunt, a Child Advocacy Center forensic interviewer, that J.W. was truthful. Again, the State asserts that Hunt was only articulating the methodology she used in assessing the case. Hunt testified that J.W. told her what happened regarding the sexual abuse. The State asked Hunt to explain her expertise in discerning truthfulness, and to apply it to J.W.'s allegations:

> Q. [by the State] Your 250 interviews that you've done personally and 100 or more—several hundreds or more that you've helped participate in, *do you kind of get a feel for when someone is being truthful with you?*
>
> A. [by Hunt] We have some things we look for as far as how consistent are the statements and the mannerisms of the child that we're speaking to. We have some things like that, that I look for.
>
> . . . .
>
> Q. Simply because a child comes forward and says I've been sexually abused, does the Child Advocacy Center, and you in particular, automatically believe that child contrary to anything else that is said or done?
>
> A. No, we do not.
>
> . . . .
>
> Q. And based on that interview [with J.W.] and conduct that you witnessed and how she described what happened, *did you form an opinion as to whether she was being truthful with you?*
>
> A. *Yes, I did.*
>
> Q. *And what was that opinion?*
>
> A. *I saw nothing in her demeanor and nothing in the information that she gave me that indicated that she was not being truthful with me.*

(Emphasis added.) The State's elicitation of Hunt's testimony regarding her expertise in determining truthfulness and credibility, and her particular determination of J.W.'s truthfulness, are express error per *Schutz*, 957 S.W.2d at 69, and *Yount*, 872 S.W.2d at 710 (child sex investigators are not lie detectors and are not to supplant the jury's role in judging witnesses' credibility). Further the State argued to the jury that Hunt had found the complainant to be credible and truthful.

### f. *Discussion: Ineffective Assistance of Counsel*

■ With deference to counsel's performance, and in trying to imagine a strategic motivation for his conduct, we note that, throughout the trial, defense counsel's tactic seems to have been to allow, without objection, the State's witnesses to testify to the credibility and truthfulness of J.W.'s allegations and then, on cross-examination, to explore the foundation for that witness' belief in the credibility, believability, or truthfulness of J.W.'s allegations. But, lack of a proper foundation is not the problem with the offensive testimony; it is inadmissible whether properly founded or not. Not surprisingly, counsel's "tactic" resulted in only more bolstering. It was, in essence, no strategy. *See Vasquez v. State*, 830 S.W.2d 948, 950 n. 3 (Tex.Crim. App.1992) (finding ineffective assistance on direct appeal because counsel's failure to request instruction on the only defense raised by the evidence "would not have been acceptable strategy"); *cf. Robertson v. State*, 187 S.W.3d 475, 484 (Tex.Crim. App.2006) (on record developed for ineffective assistance claim, counsel's *misguided* and legally misinformed strategy to introduce evidence of defendant's otherwise inadmissible prior convictions, when only issue was defendant's credibility, constitutes deficient performance since such evidence "could serve no strategic value").

On similar facts, three courts—Texarkana, Dallas, and El Paso—have found failure to object to the repeated elicitation and offer of this type of testimony to constitute ineffective assistance of counsel when presented on direct review. *See Sessums v. State*, 129 S.W.3d 242 (Tex.App.-Texarkana 2004, pet. ref'd) (aggravated sexual assault of a child); *Miller v. State*, 757 S.W.2d 880 (Tex.App.-Dallas 1988, pet. ref'd) (aggravated sexual assault of a child); *Garcia v. State*, 712 S.W.2d 249 (Tex.App.-El Paso 1986, pet. ref'd) (burglary with attempt to commit indecency with a child). In all three of those cases, as in the one now before us, the victim's credibility was the only real issue at trial and counsel repeatedly or entirely failed to object to the introduction of testimony on the truthfulness and credibility of the victim's allegations. *See Sessums*, 129 S.W.3d 242; *Miller*, 757 S.W.2d 880; *Garcia*, 712 S.W.2d 249. Although the court in the *Garcia* case did have the benefit of evidence developed at a post-trial hearing on the ineffective assistance claim, both the *Sessums* and *Miller* cases assessed the ineffective assistance claim on the bare and undeveloped trial records on direct appeal. *Compare Sessums*, 129 S.W.3d 242, *and Miller*, 757 S.W.2d 880, *with Garcia*, 712 S.W.2d 249.

■ At oral argument, the State argued that the sole defense strategy was to walk the fine line between showing that the victim was lying and not alienating the jury through "trashing" the victim. We do not see how the failure to object to inadmissible testimony from all of the witnesses that the victim was truthful would play any role in a strategy of attempting to prove the complainant was lying. Where counsel's strategy is premised on an incorrect understanding of the law, we need not defer to that as a reasonable strategy. *Cf. Robertson*, 187 S.W.3d at 484. We have

previously stated, in regard to pervasive testimony about the truthfulness of a complainant's allegations: "There is no conceivable strategy or tactic that would justify allowing this testimony in front of a jury." *Sessums*, 129 S.W.3d at 248. Indeed, as our sister court has stated, "we can glean no sound trial strategy in defense counsel's failure to object to the extensive, inadmissible testimony concerning the only real issue at trial—complainant's credibility." *Miller*, 757 S.W.2d at 884.

Fuller's counsel's conduct in allowing the State unfettered and unchecked bolstering of the victim was so outrageous that no competent attorney would have engaged in it. *See Thompson*, 9 S.W.3d at 814; *cf. Goodspeed v. State*, 187 S.W.3d 390, 396 (Tex.Crim.App.2005) (Holcomb, J., dissenting) ("I do not believe there is anything [trial counsel] could say under these circumstances to show that his actions were the product of a sound trial strategy."). Given the context of the trial—that Fuller's entire defense was that J.W.'s allegations were false and, yet, Fuller's counsel allowed every State's witness to testify to the truthfulness and credibility of J.W.'s allegations—and judging counsel's performance by the totality of the representation, the record affirmatively demonstrates counsel's conduct falls outside the wide range of reasonable representation and is objectively deficient.

Moreover, these deficiencies denied Fuller a fair trial. *See Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App.1986). In the prejudice question, we examine counsel's errors not as isolated incidents, but in the context of the overall record. *Ex parte Menchaca*, 854 S.W.2d 128, 132 (Tex. Crim.App.1993). These were not isolated incidents; counsel's errors pervaded and prejudiced the entire defense. *Cf. McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim.App.1992) ("[I]solated instances in

the record reflecting errors of omission or commission do not render counsel's performance ineffective...."). Counsel even failed to object when the State emphasized the objectionable testimony to the jury during closing argument. During closing argument, the State told the jury that J.W.'s teacher knows kids of good quality; that Huff, with "many, many years experience" "said that he believed—believed her beyond a reasonable doubt. That's credible"; that Hunt is experienced in these matters, that she has trained others "to pick up on whether people are being credible," and that J.W. "was credible and truthful to her"; and, finally, that "Character, that's what this case is about. It's about character, the type of person that you have." In both *Miller* and *Sessums*, the courts considered, in assessing prejudice, that the State had emphasized to the jury, during closing argument, the various witnesses' belief in the complainants' truthfulness and credibility. *See Sessums*, 129 S.W.3d at 248; *Miller*, 757 S.W.2d at 884.

This case was a swearing match between the complainant and Fuller, who denied that he had oral sex with the complainant or exposed himself to her. The State summarized the issue when it asked Fuller, "Does it boil down to your word versus [J.W.'s] word?" Fuller's response was, "My word, yeah, the truth, yes." Markeith Wallace, who had fathered a child by J.W., testified J.W. told him that nothing happened between her and Fuller. Joyce Allen testified that J.W. at first told her she had been raped by Fuller, but on further questioning, J.W. said only that Fuller accidentally walked in on her while she was taking a shower. She further testified J.W. said she would do whatever she could to get Fuller away from her mother. In addition, J.W. signed an affidavit of nonprosecution stating, "I believe that justice will be better served if all charges arising out of this transaction are dismissed...." The only real issue in this case was the credibility of the witnesses, in particular the complaining witness, J.W. The State's case-in-chief consisted of the testimony of J.W. and four witnesses, each of whom testified in some manner that J.W. was a truthful and credible witness. Under these circumstances, we find, as in *Miller* and *Sessums*, there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. We find that Fuller's counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *See Strickland*, 466 U.S. at 686, 688, 104 S.Ct. 2052; *Sessums*, 129 S.W.3d at 248 ("[T]here is a reasonable probability that, but for counsel's error in failing to object to extensive, inadmissible, and critical testimony, the result of the proceeding would have been different.").

## IV. Conclusion

Fuller's points of error concerning legal sufficiency and speedy trial are overruled. Fuller has met his burden on the points of error asserting ineffective assistance of counsel; those points of error are sustained. Since the ineffective assistance issue is dispositive, we need not address Fuller's remaining points of error.

We reverse the judgment and remand the case for a new trial.