# NO. 12-08-00378-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE MATTER OF* | § | *APPEAL FROM THE* |
| | § | *COUNTY COURT AT LAW #2* |
| *D.J.T., A JUVENILE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

D.J.T, a juvenile, was adjudicated as having engaged in delinquent conduct after a jury found he had committed the offenses of aggravated sexual assault and indecency with a child. D.J.T. appeals from that judgment. In one issue, he argues that the trial court abused its discretion by overruling his motion for a mistrial following the State's repeated attempts to offer opinion testimony as to the believability of the complainant. We affirm.

### BACKGROUND

The State alleged that D.J.T. was a child who engaged in delinquent conduct, specifically, the offenses of aggravated sexual assault and indecency with a child, which would have been felony offenses had D.J.T. been an adult. D.J.T. denied the allegations, and a jury trial was held. During the trial, the State called five witnesses, including the complainant, D.S. (a pseudonym). David Wells, an investigator with the Angelina County Sheriff's Department, testified regarding the facts that led to formal allegations being brought by the State. During his testimony, the following exchange occurred:

Q: What specific information did you hear or were you told that formed the basis of your belief that D.J.T. committed the offense of indecency?

A:      The description provided during the interview at the Alliance by D.S., and it was very graphic and believable.

D.J.T. objected to Well's answer, specifically to the assertion that Wells found the witness to be believable. The trial court sustained the objection and instructed the jury to disregard the statement about the believability of the witness.

Later in Wells's testimony, the following questions and answers occurred:

Q:      At some point in your investigation, did you determine probable cause existed?

A:      Yes, I believe probable cause existed when I turned the case over to juvenile.

Q:      And that was for both of the offenses you had mentioned earlier?

A:      Yes, it was.

Q:      And what is the standard for probable cause?

A:      Believability of the complainant in the case.

Again, D.J.T. objected. The trial court sustained the objection and instructed the jury that the offered standard was "not a proper definition for probable cause."

Finally, as the State's questioning of Wells came to an end, the following exchange occurred:

Q:      What is a complainant?

A:      A complainant is the victim of a crime.

Q:      If you didn't believe the complainant, would you have ever gone forward with this case?

D.J.T.'s counsel objected. The trial court sustained the objection and instructed the jury to disregard the question. D.J.T. then moved for a mistrial. The trial court overruled that motion.

D.J.T. and his father also testified. The jury found that D.J.T. had committed the acts as alleged in the State's petition. Based on that finding, the juvenile court placed D.J.T on intensive supervision probation. This appeal followed.

## MOTION FOR MISTRIAL

In a single issue, D.J.T. contends that the trial court abused its discretion in denying his

2

motion for mistrial following the State's repeated attempts to have Investigator Wells testify about the believability of the complainant. D.J.T. contends that this was cumulative error which required the trial court to declare a mistrial and grant him a new trial.

**Standard of Review**

A witness may not testify that another witness is telling the truth or that the witness's testimony is believable. *See Schutz v. State*, 957 S.W.2d 52, 69 (Tex. Crim. App. 1997). Instead, the members of the jury are to determine the credibility of the witnesses. *See Yount v. State*, 872 S.W.2d 706, 710–11 (Tex. Crim. App. 1993).

Mistrial is appropriate for errors so prejudicial that "expenditure of further time and expense would be wasteful and futile." *See Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *See Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A trial court does not abuse its discretion if its ruling is within the zone of reasonable disagreement. *Id*.

**Analysis**

The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2003). In determining whether a mistrial should be granted, we must balance the following three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *See Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004).

*Severity of the Misconduct*

There were three exchanges involving the believability of the complaining witness. In the first exchange, Wells's answer was not responsive to the question asked. Specifically, the State asked Wells for the basis of his belief that D.J.T. committed indecency. Wells replied that the basis of his belief was the complainant's description of the assault, but he went further in his answer and stated that her description was "believable." This appears to be an unnecessary line of questioning, but the State did not specifically seek the answer given, and Wells's answer was not particularly invasive of the jury's role to determine credibility.

The second response, and the line of questions that provoked it, are more problematic. The

3

State asked the investigator if he determined that probable cause existed. He stated that he did and then prompted an objection when he testified that the standard for probable cause was the "believability of the complainant in the case." The purpose of this line of questioning may have been to set up a question that followed. Specifically, the State asked the witness if probable cause was a lower threshold than the beyond a reasonable doubt standard. He testified that it was, and then agreed with the prosecutor that he was "never asked to determine if someone did or did not do something beyond a reasonable doubt."

The State appeared to be motivated, for reasons that are unclear, to explain to the jury that the investigator acted on a lower standard of proof than was required for the jury to convict. This was unnecessary, but we are not convinced that this question and answer constitute serious misconduct.

Finally, the prosecutor asked the officer if he would have gone forward with this case if he had not believed the complainant. No answer was given because Appellant immediately objected and moved for a mistrial based on the repeated revisiting of whether the investigator believed the witness. The jury likely understood that the officer believed the child witness even if this question had not been asked. Nevertheless, it is inappropriate for a witness to vouch for the credibility of another witness, and the State should not have asked the question. *See Schutz*, 957 S.W.2d at 69; *Fuller v. State*, 224 S.W.3d 823, 835 (Tex. App.–Texarkana 2007, no pet.) (improper for witness to testify that she saw nothing to indicate that child witness was being untruthful); *see also Weathersby v. State*, 627 S.W.2d 729, 730 (Tex. Crim. App. 1982) (improper for two detectives to testify that they believed defendant was guilty); *Greene v. State*, 928 S.W.2d 119, 124 (Tex. App.–San Antonio 1986, no pet.) (improper for detective to vouch for State's main witness's credibility).

In considering Wells's testimony and the questions asked by the prosecution, we find it instructive to compare the facts of this case to the facts in *Fuller*. That case involved the sexual assault of a child. The State's case in chief consisted of the testimony of the victim and four witnesses, each of whom testified in some manner that the victim was a truthful and credible witness. *Fuller*, 224 S.W.3d at 837. Further, these witnesses' belief in the victim's truthfulness and credibility was emphasized during closing argument. *Id.* The court of appeals reversed the

4

conviction in that case because trial counsel's failure to object to the testimony about the victim's credibility caused the defendant harm. **_Id._**

This case is different. Here, only Wells gave testimony that could be considered as improperly bolstering the believability of the complainant and his two statements were relatively indirect. The prosecutor's third question went directly to the heart of the matter, whether Wells believed the complainant, but it was not answered. The State does not argue that the questions or the answers given were proper. Instead, the State argues that any error was harmless.[1] Accordingly, we conclude that this is misconduct, though not especially egregious misconduct.

### _Measures Adapted to Cure the Misconduct_

Following both of Wells's statements regarding the believability of the victim and the prosecution's question regarding the victim's believability, the trial court immediately instructed the jury to disregard the testimony or question. Not only did the trial court promptly instruct the jury while Wells was testifying, but it reemphasized those instructions during its charge to the jury by telling the jury to "continue to observe all the instructions that I have previously given you." Moreover, the trial court further instructed the jury as follows: "You are the sole judges of the credibility of the witnesses and the weight to be given to their testimony, but in matters of law you must be governed by the instructions in the charge. In discharging your responsibility on this jury, you will observe all of the instructions which I have previously given."

We presume that a jury follows instructions given by a trial court. _See **Ovalle v. State**_, 13 S.W.3d 774, 783 (Tex. Crim. App. 2003); **_Colburn v. State_**, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); **_Reynolds v. State_**, 227 S.W.3d 355, 367 (Tex. App.–Texarkana 2007, no pet.). Furthermore, with respect to the unanswered question, "the asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard." _See **Wood**_, 18 S.W.3d at 648. The trial court's assiduous attention to this issue supports the presumption that the jury followed their instructions to disregard the inappropriate questions and answers.

---

[1] The State did reference this issue again in closing arguments. Specifically, the State argued that the testimony showed "what offenses [the officer] thought [D.J.T.] committed." D.J.T. did not object to this statement and does not address this on appeal. While this argument appears to be unnecessary, the State actually minimized the significance of the investigator's belief that probable cause existed, rather that exhorting the jury to believe the witness because the officer did.

*Certainty of Conviction Absent the Misconduct*

In sexual abuse cases, the testimony of the child victim alone is sufficient to support the conviction. *See* **Tran v. State**, 221 S.W.3d 79, 88 (Tex. App.–Houston [14th Dist.] 2005, no pet.). In this case, the jury was able to hear from both the complaining witness and from D.J.T and to make its own independent judgment as to the veracity and credibility of the witnesses.

The fact that the jury convicted D.J.T. is not enough, as the State argues, to show that there would have been a conviction absent the errant questions and answers. On the other hand, the questions and answers here are not the kind of evidence that is of such a "damning character" that it would leave an impression on the minds of the jury that was likely to override their ability and cause the jury to convict when it otherwise would not. *See* **Kemp v. State**, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). Instead, the idea that was conveyed to the jury, if any, was that the investigating officer believed the child. He did not offer any specialized expertise behind his belief in the child's account, did not suggest that his conclusion was based on inadmissible evidence or other misconduct on D.J.T's part.

The complaining witness's testimony encompassed all of the elements of the offense, and D.J.T.'s counsel cross examined her at length. The jury also heard of her reports to others about D.J.T.'s actions, and heard testimony from D.J.T. and his father. After considering all of the evidence, we cannot conclude that a jury was certain to find for the State. On the other hand, there was substantial evidence to support the verdict, and the transgressions by the State and its witness were not particularly egregious.

*Conclusion*

After balancing all of the factors, we hold that the trial court did not err in overruling D.J.T.'s motion for mistrial. The questions and answers about whether the investigator believed the complaining witness should not have been before the jury. A mistrial, however, is required only in extreme circumstances where the prejudice is incurable. *See* **Archie**, 221 S.W.3d at 699. In the context of this case, we cannot conclude that the impermissible questions and answers in this case caused the kind of incurable prejudice that could not be adequately addressed by the trial court's repeated instructions to the jury. We overrule D.J.T.'s sole issue.

**DISPOSITION**

Having overruled D.J.T.'s sole issue, we *affirm* the judgment of the trial court.

  JAMES T. WORTHEN  
Chief Justice

Opinion delivered August 19, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

7