NO. 12-08-00378-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


§
 APPEAL FROM THE 

IN THE MATTER OF

§
 COUNTY COURT AT LAW #2

D.J.T., A JUVENILE

§
 ANGELINA COUNTY, TEXAS

 

MEMORANDUM OPINION


 D.J.T, a juvenile, was adjudicated as having engaged in delinquent conduct after a jury found
he had committed the offenses of aggravated sexual assault and indecency with a child. D.J.T.
appeals from that judgment. In one issue, he argues that the trial court abused its discretion by
overruling his motion for a mistrial following the State's repeated attempts to offer opinion
testimony as to the believability of the complainant. We affirm.


Background


 The State alleged that D.J.T. was a child who engaged in delinquent conduct, specifically,
the offenses of aggravated sexual assault and indecency with a child, which would have been felony
offenses had D.J.T. been an adult. D.J.T. denied the allegations, and a jury trial was held. During
the trial, the State called five witnesses, including the complainant, D.S. (a pseudonym). David
Wells, an investigator with the Angelina County Sheriff's Department, testified regarding the facts
that led to formal allegations being brought by the State. During his testimony, the following
exchange occurred:


 Q: What specific information did you hear or were you told that formed the basis of
your belief that D.J.T. committed the offense of indecency?


 A: The description provided during the interview at the Alliance by D.S., and it was
very graphic and believable.


 D.J.T. objected to Well's answer, specifically to the assertion that Wells found the witness
to be believable. The trial court sustained the objection and instructed the jury to disregard the
statement about the believability of the witness.

 Later in Wells's testimony, the following questions and answers occurred:


 Q: At some point in your investigation, did you determine probable cause existed?


 A: Yes, I believe probable cause existed when I turned the case over to juvenile.


 Q: And that was for both of the offenses you had mentioned earlier?


 A: Yes, it was.


 Q: And what is the standard for probable cause?


 A: Believability of the complainant in the case.


 Again, D.J.T. objected. The trial court sustained the objection and instructed the jury that
the offered standard was "not a proper definition for probable cause."

 Finally, as the State's questioning of Wells came to an end, the following exchange occurred:


 Q: What is a complainant?


 A: A complainant is the victim of a crime.


 Q: If you didn't believe the complainant, would you have ever gone forward with this
case?


 D.J.T.'s counsel objected. The trial court sustained the objection and instructed the jury to
disregard the question. D.J.T. then moved for a mistrial. The trial court overruled that motion. 

 D.J.T. and his father also testified. The jury found that D.J.T. had committed the acts as
alleged in the State's petition. Based on that finding, the juvenile court placed D.J.T on intensive
supervision probation. This appeal followed.


Motion for Mistrial


 In a single issue, D.J.T. contends that the trial court abused its discretion in denying his
motion for mistrial following the State's repeated attempts to have Investigator Wells testify about
the believability of the complainant. D.J.T. contends that this was cumulative error which required
the trial court to declare a mistrial and grant him a new trial. 

Standard of Review

 A witness may not testify that another witness is telling the truth or that the witness's
testimony is believable. See Schutz v. State, 957 S.W.2d 52, 69 (Tex. Crim. App. 1997). Instead,
the members of the jury are to determine the credibility of the witnesses. See Yount v. State, 872
S.W.2d 706, 710-11 (Tex. Crim. App. 1993).

 Mistrial is appropriate for errors so prejudicial that "expenditure of further time and expense
would be wasteful and futile." See Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). 
We review a trial court's ruling on a motion for mistrial for an abuse of discretion. See Archie v.
State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A trial court does not abuse its discretion if
its ruling is within the zone of reasonable disagreement. Id. 

Analysis

 The determination of whether a given error necessitates a mistrial must be made by
examining the particular facts of the case. Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App.
2003). In determining whether a mistrial should be granted, we must balance the following three
factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3)
the certainty of conviction absent the misconduct. See Ramon v. State, 159 S.W.3d 927, 929 (Tex.
Crim. App. 2004). 

 Severity of the Misconduct

 There were three exchanges involving the believability of the complaining witness. In the
first exchange, Wells's answer was not responsive to the question asked. Specifically, the State
asked Wells for the basis of his belief that D.J.T. committed indecency. Wells replied that the basis
of his belief was the complainant's description of the assault, but he went further in his answer and
stated that her description was "believable." This appears to be an unnecessary line of questioning,
but the State did not specifically seek the answer given, and Wells's answer was not particularly
invasive of the jury's role to determine credibility.

 The second response, and the line of questions that provoked it, are more problematic. The
State asked the investigator if he determined that probable cause existed. He stated that he did and
then prompted an objection when he testified that the standard for probable cause was the
"believability of the complainant in the case." The purpose of this line of questioning may have been
to set up a question that followed. Specifically, the State asked the witness if probable cause was
a lower threshold than the beyond a reasonable doubt standard. He testified that it was, and then
agreed with the prosecutor that he was "never asked to determine if someone did or did not do
something beyond a reasonable doubt." 

 The State appeared to be motivated, for reasons that are unclear, to explain to the jury that
the investigator acted on a lower standard of proof than was required for the jury to convict. This
was unnecessary, but we are not convinced that this question and answer constitute serious
misconduct. 

 Finally, the prosecutor asked the officer if he would have gone forward with this case if he
had not believed the complainant. No answer was given because Appellant immediately objected
and moved for a mistrial based on the repeated revisiting of whether the investigator believed the
witness. The jury likely understood that the officer believed the child witness even if this question
had not been asked. Nevertheless, it is inappropriate for a witness to vouch for the credibility of
another witness, and the State should not have asked the question. See Schutz, 957 S.W.2d at 69;
Fuller v. State, 224 S.W.3d 823, 835 (Tex. App.-Texarkana 2007, no pet.) (improper for witness
to testify that she saw nothing to indicate that child witness was being untruthful); see also
Weathersby v. State, 627 S.W.2d 729, 730 (Tex. Crim. App. 1982) (improper for two detectives to
testify that they believed defendant was guilty); Greene v. State, 928 S.W.2d 119, 124 (Tex.
App.-San Antonio 1986, no pet.) (improper for detective to vouch for State's main witness's
credibility). 

 In considering Wells's testimony and the questions asked by the prosecution, we find it
instructive to compare the facts of this case to the facts in Fuller. That case involved the sexual
assault of a child. The State's case in chief consisted of the testimony of the victim and four
witnesses, each of whom testified in some manner that the victim was a truthful and credible witness. 
Fuller, 224 S.W.3d at 837. Further, these witnesses' belief in the victim's truthfulness and
credibility was emphasized during closing argument. Id. The court of appeals reversed the
conviction in that case because trial counsel's failure to object to the testimony about the victim's
credibility caused the defendant harm. Id.

 This case is different. Here, only Wells gave testimony that could be considered as
improperly bolstering the believability of the complainant and his two statements were relatively
indirect. The prosecutor's third question went directly to the heart of the matter, whether Wells
believed the complainant, but it was not answered. The State does not argue that the questions or
the answers given were proper. Instead, the State argues that any error was harmless. (1) Accordingly,
we conclude that this is misconduct, though not especially egregious misconduct. 

 Measures Adapted to Cure the Misconduct

 Following both of Wells's statements regarding the believability of the victim and the
prosecution's question regarding the victim's believability, the trial court immediately instructed the
jury to disregard the testimony or question. Not only did the trial court promptly instruct the jury
while Wells was testifying, but it reemphasized those instructions during its charge to the jury by
telling the jury to "continue to observe all the instructions that I have previously given you." 
Moreover, the trial court further instructed the jury as follows: "You are the sole judges of the
credibility of the witnesses and the weight to be given to their testimony, but in matters of law you
must be governed by the instructions in the charge. In discharging your responsibility on this jury,
you will observe all of the instructions which I have previously given." 

 We presume that a jury follows instructions given by a trial court. See Ovalle v. State, 13
S.W.3d 774, 783 (Tex. Crim. App. 2003); Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App.
1998); Reynolds v. State, 227 S.W.3d 355, 367 (Tex. App.-Texarkana 2007, no pet.). Furthermore,
with respect to the unanswered question, "the asking of an improper question will seldom call for
a mistrial, because, in most cases, any harm can be cured by an instruction to disregard." See Wood,
18 S.W.3d at 648. The trial court's assiduous attention to this issue supports the presumption that
the jury followed their instructions to disregard the inappropriate questions and answers. 


 Certainty of Conviction Absent the Misconduct

 In sexual abuse cases, the testimony of the child victim alone is sufficient to support the
conviction. See Tran v. State, 221 S.W.3d 79, 88 (Tex. App.-Houston [14th Dist.] 2005, no pet.). 
In this case, the jury was able to hear from both the complaining witness and from D.J.T and to make
its own independent judgment as to the veracity and credibility of the witnesses. 

 The fact that the jury convicted D.J.T. is not enough, as the State argues, to show that there
would have been a conviction absent the errant questions and answers. On the other hand, the
questions and answers here are not the kind of evidence that is of such a "damning character" that
it would leave an impression on the minds of the jury that was likely to override their ability and
cause the jury to convict when it otherwise would not. See Kemp v. State, 846 S.W.2d 289, 308
(Tex. Crim. App. 1992). Instead, the idea that was conveyed to the jury, if any, was that the
investigating officer believed the child. He did not offer any specialized expertise behind his belief
in the child's account, did not suggest that his conclusion was based on inadmissible evidence or
other misconduct on D.J.T's part. 

 The complaining witness's testimony encompassed all of the elements of the offense, and
D.J.T.'s counsel cross examined her at length. The jury also heard of her reports to others about
D.J.T.'s actions, and heard testimony from D.J.T. and his father. After considering all of the
evidence, we cannot conclude that a jury was certain to find for the State. On the other hand, there
was substantial evidence to support the verdict, and the transgressions by the State and its witness
were not particularly egregious. 

 Conclusion

 After balancing all of the factors, we hold that the trial court did not err in overruling D.J.T.'s
motion for mistrial. The questions and answers about whether the investigator believed the
complaining witness should not have been before the jury. A mistrial, however, is required only in
extreme circumstances where the prejudice is incurable. See Archie, 221 S.W.3d at 699. In the
context of this case, we cannot conclude that the impermissible questions and answers in this case
caused the kind of incurable prejudice that could not be adequately addressed by the trial court's
repeated instructions to the jury. We overrule D.J.T.'s sole issue. 





Disposition


 Having overruled D.J.T.'s sole issue, we affirm the judgment of the trial court.


 JAMES T. WORTHEN 

 Chief Justice





Opinion delivered August 19, 2009.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.






 














(PUBLISH)
 
1. The State did reference this issue again in closing arguments. Specifically, the State argued that the testimony
showed "what offenses [the officer] thought [D.J.T.] committed." D.J.T. did not object to this statement and does
not address this on appeal. While this argument appears to be unnecessary, the State actually minimized the
significance of the investigator's belief that probable cause existed, rather that exhorting the jury to believe the
witness because the officer did.