

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00123-CR

_____


JOHN GEORGE MCGUIRE, III, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 15,085


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

After his conviction by a jury of aggravated assault of a child, John George McGuire, III, was sentenced to fifteen years' imprisonment and fined $5,000.00. The conviction was based upon the testimony of a twelve-year-old girl that while McGuire was staying overnight at her home, she was awakened by the pain of McGuire's penis being inserted in her vagina and discovered him atop her. McGuire denied assaulting her.

McGuire contends on appeal that his counsel was so ineffective as to violate the constitutional requirement of effective assistance of counsel.

The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686.

This requires a showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004).

This Court will neither second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

We recognize that in this case, no post-trial hearings were conducted, and there is nothing in the record to indicate why counsel conducted the trial as he did or the reasoning which may have prompted counsel's actions or lack thereof. With that caveat, we turn to the behavior pointed out by counsel on appeal.

McGuire first suggests his counsel was ineffective because he introduced evidence at guilt/innocence about two other situations in which McGuire had engaged in sexual conduct with

girls who were younger than the age for consensual sex, and he also questioned McGuire about the existence of his MySpace page and his contacts with high school and junior high school girls through that means of communication.

As to the questions concerning his sexual interactions with underaged girls, both of the girls with whom he had copulated were younger than McGuire at the time he had sex with them. McGuire was twenty at the time of trial. In one of these relationships, while he was a junior in high school, he was dating a freshman. As to the other, McGuire testified as to a relationship with a girl who was seventeen (and about to turn eighteen) at the time of trial. Therefore, both of these relationships were with females about three years younger than he.

On cross-examination, the State attacked those relationships based on the age difference, pointing out that the girls were both underage at the time of the relationships.

Counsel argues strongly that it was ineffective per se for defense counsel to introduce such evidence. He points out that it would encourage the jury to find him guilty not of the crime at bar, but generally for being a bad person who had sex with minors. That argument has a good deal of merit. Indeed, the Texas Rules of Evidence specifically provide that such evidence is inadmissible for precisely the reason argued by appellate counsel (although the stricture has been much weakened by numerous exceptions). *See* TEX. R. EVID. 404(b), 412(b), (c).

However, there is also no evidence to explain why that testimony was elicited. Where an appellate record is silent as to why trial counsel failed to take certain actions, the appellant has failed

4

to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable. *See Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007). In this case, there is no record at any level to indicate why counsel chose to take or declined to take any of these actions, leaving us with only speculation as to his reasoning.[1]

Moreover, if the appellate court can imagine a strategic motive to explain the ineffective assistance claim, then the reviewing court may not sustain the appellant's point of error. *Freeman v. State*, 125 S.W.3d 505, 511 (Tex. Crim. App. 2003); *Bryant v. State*, 282 S.W.3d 156, 168 (Tex. App.—Texarkana 2009, pet. dism'd, untimely filed, pet. ref'd [2 pets.]).

The stated exception to that requirement exists only if the behavior "was in fact 'so outrageous that no competent attorney would have engaged in it.'" *Mata*, 226 S.W.3d at 430. Thus, utilizing reasoning that curbs application to only very limited circumstances, some claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." *Massaro v. United States*, 538 U.S. 500, 508 (2003).

The State argues first that an exception to Rule 404 of the Texas Rules of Evidence could apply, and posits a number of possible reasons why it may not apply, but there seems to be no genuinely apparent applicable exception. However, it is also possible (despite the State's argument attempting to focus on the extreme age differential of three years between McGuire and the younger

---

[1] If the record on direct appeal is inadequate, habeas corpus is the more appropriate avenue for developing the record on this issue. *Moore v. State*, 227 S.W.3d 421, 426 n.1 (Tex. App.—Texarkana 2007, pet. ref'd).

girl) that counsel was introducing the evidence to show the jury that McGuire was not a pedophile and that his interests were directed (and had been directed since he was in high school) toward females somewhat close in age to him, rather than children. It could also show his pattern of consensual activities with willing females, rather than the forcible rape alleged in this case. Further, sometimes a testifying defendant can inadvertently open the door to questions on cross-examination that trial counsel would seldom be able to accurately anticipate. Some practitioners subscribe to the theory that it is better to have the defendant testify about possibly damaging testimony on direct testimony in order to demonstrate candor, rather than having it become divulged during cross-examination. In the absence of anything in the record to show otherwise, and in light of the context set out above, we must conclude that this is at least an arguable tactical basis for introducing the evidence, and not one so beyond the bounds of reason as to show constitutionally ineffective counsel.

Regarding the questioning by his own attorney about McGuire's activities on MySpace, as an example of ineffective assistance, appellate counsel points out that the State used that information on cross-examination to suggest wrongdoing by McGuire because females of that age range were listed as "friends" on his site. However, that evidence shows entirely nonsexual communication and provides no support for the State's position, although the State attempted to portray the evidence in a form that would have done so. It is reasonable for counsel to use this evidence to show McGuire's normal relationships with young women, rather than the abnormal pedophilic relationships posited by the State. Again, trial counsel may have believed that McGuire's voluntary revelations on direct

6

examination concerning contacts on MySpace would have enhanced his believability concerning the more meaty portions of his testimony. There is at least an arguable tactical basis for introduction of the evidence.

McGuire also argues that counsel was ineffective for having failed to lodge an objection when the State questioned McGuire about the nature of and language used in his MySpace communications with a young correspondent on that medium, Mady Wilson. The State does not respond to this argument. Upon examination of the record, it appears that he engaged in some gratuitous commentary of McGuire in its questioning, and promised the jury additional proof that it never subsequently provided. This exchange occurred:

> Q.      [By the State] Mady Wilson, let's talk about her because there's going to be testimony if you don't admit it under oath here from her that as at the age of fourteen you sent My Space messages to her stating how pretty she was and you wanted to get to know her better. Do you remember doing that?
>
> A.      [By McGuire] Can I ask you a question real quick?
>
> Q.      No, sir. This is how it works. I ask you the questions, Mr. McGuire. Did you send Mady Wilson a My Space message stating you thought she was pretty and you wanted to get to know her better, yes or no?
>
> A.      No sir.

Wilson did not testify, and there was no further proof on this matter. The comment by the State was itself objectionable; the State had represented itself to be effectively testifying about what it purported to be the facts before posing any question. This tactic created a classic conundrum for McGuire. Is it better to voice an objection to an improper statement such as this and risk

7

emphasizing it (despite the sometimes dubious and perhaps hollow temporary victory of having the trial court give an instruction to disregard), thereby cementing the statement in the memory of the jurors' minds, or is it preferable to move quickly past it in the hope that the jurors either relegate it to its proper role or forget that it was said? Although another attorney might have handled the situation differently (and firmly believed that was the most effective thing to do), that decision can be simply a matter of trial strategy and tactics. Neither tactic is patently erroneous.

McGuire also argues that trial counsel's decision to not object to questions to McGuire by the State about his relationship with his father and the circumstances surrounding his moving out of an apartment which McGuire shared with Shane Putnam was indefensible. McGuire's father, once an active Baptist minister, was evidently drinking alcohol; there was testimony that Putnam was engaged in a sexual relationship with McGuire's married sister—a circumstance which so distressed McGuire that he moved out of the apartment, rendering himself homeless. The State suggests that these could be seen as mitigating, and thus counsel had no reason to object. However, this evidence was offered at the guilt/innocence phase of trial. The concept of mitigation presupposes that McGuire was guilty, a matter that had not yet been decided (but should receive lesser punishment). Those matters were not relevant to this prosecution. However, counsel could have decided to allow the matter to proceed in an attempt to humanize his client, rather than leaving him as the faceless attacker of children he was being painted by the State. That reasoning has its weaknesses, as this evidence could also provide support for showing how the combination of stresses might make it

8

easier for an otherwise normal person to lose self-control in a single instance. Nevertheless, there is at least an arguable basis for choosing to sit mute while the State questioned McGuire on these matters. Even if there were no arguable basis for the lack of an objection, although the injection of these irrelevancies would serve to unnecessarily embarrass others (McGuire's father, sister, and former friend and roommate), it is difficult to understand how they would harm McGuire in the trial.

McGuire also argues that counsel was inadequate for failing to question the admissibility of his statements made to police investigator Roxanne Warren. Their interaction occurred while McGuire was in custody. She testified that she told McGuire that the girl had accused him, and that he denied the act, and could provide no plausible reason why she might have concocted such a story. McGuire argues that counsel was ineffective because he did not attempt to play the recording of the interview, rather than merely allowing the investigator to recite her version of what McGuire had stated during the interrogation, including her response to McGuire when he had asked her if she believed him. The response was no.

The recording to which McGuire refers is not contained in the record. Even had it been included, there is no indication of the reasoning of counsel in failing either to object or offer the video recording itself as evidence. It very well may be that trial counsel believed that allowing the jury to view the recorded interview would have served to damage McGuire's case, not help it. In the absence of any information that would allow this Court to make an informed decision, we cannot conclude for all purposes that counsel was ineffective in this instance.

9

McGuire next argues that counsel was not effective because he did not object to testimony by Officer Warren about the truthfulness of the complainant. The State first elicited testimony from Warren that twelve-year-old girls were, in her experience, not capable of maintaining a detailed lie over a period of weeks. The State then asked:

> Q.    In your opinion in this case did the child appear to be truthful from the beginning through all the other witnesses you interviewed and all the evidence you reviewed and received in this case?
>
> A.    [By Warren] Yes.

Counsel did not object. McGuire is absolutely correct in stating that such testimony is improper and inadmissible. Expert testimony that a particular witness is truthful is inadmissible under Rule 702 of the Texas Rules of Evidence. TEX. R. EVID. 702. Similarly, an expert may not give an opinion that the complainant or a class of persons to which the complainant belongs is truthful. *Yount v. State*, 872 S.W.2d 706, 710 (Tex. Crim. App. 1993). Instead of experts, it is jurors who must draw "conclusions concerning the credibility of the parties in issue." *Id.* Further, nonexpert testimony may be offered to support the credibility of a witness in the form of opinion or reputation, but "the evidence may refer only to character for truthfulness or untruthfulness." TEX. R. EVID. 608(a)(1). A lay witness may not, under Rule 608, testify as to the complainant's truthfulness in the particular allegations. *See Schutz v. State*, 957 S.W.2d 52, 72 (Tex. Crim. App. 1997); *Fuller v. State*, 224 S.W.3d 823, 832–33 (Tex. App.—Texarkana 2007, no pet.). Further, evidence of truthful character

10

may only be offered "after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." TEX. R. EVID. 608(a)(2).

There is no apparent reason for defense counsel to allow a police officer to testify to this ultimate issue of fact without objection—unless counsel had some reason to believe that the response might be that in his opinion, the victim was lying. It would be an understatement to say that this result is unlikely. However, even though no reason is apparent to this Court, we are confronted with a situation where there is nothing in this record to indicate why counsel did not object. We also note that a single question was involved, and not one that was part of a pattern of failures to object to such testimony.

Where an appellate record is silent as to why trial counsel failed to take certain actions, the appellant has failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable. *See Mata*, 226 S.W.3d at 431. In this case, there is no record at any level to indicate why counsel chose to take certain actions or declined to object. In the absence of such a record, and in the lack of anything that would indicate such completely ineffective assistance as could be shown without such a record, we overrule the point of error. We cannot conclude that counsel was ineffective for failing to object to this singular question and response. In so doing, we distinguish this case from *Fuller*, 224 S.W.3d at 836–37, in which we determined that the repeated, unfettered, and unchecked bolstering of the victim by multiple representations of the victim's

11

truthfulness without objection to be so pervasive during the trial that ineffective assistance of counsel was shown on the face of the record.

However, even had we found ineffective assistance in this particular situation, meeting the requirements of the first prong of the *Strickland* test, the appellant must also show that counsel's performance prejudiced the defense. *Strickland*, 466 U.S. at 692. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. *Id.* at 693. Instead, the *Strickland* prejudice prong requires the defendant to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

A reasonable probability is a probability sufficient to undermine the court's confidence in the outcome. *Strickland*, 466 U.S. at 694. When addressing this second prong of *Strickland*, the reviewing court should examine counsel's errors not as isolated incidents, but in the context of the overall record. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986).

The Texas Court of Criminal Appeals recently reiterated that a defendant is promised a "fair trial, not a perfect one." *Davis v. State*, 203 S.W.3d 84, 849 (Tex. Crim. App. 2006). In this case, the single improper question and answer, although clearly of such a nature as to be harmful, are not so flagrant in view of the remainder of the proceedings as to create the requisite "reasonable probability" that but for the error, the result of the proceeding would have been different.

McGuire next argues that counsel was ineffective because he did not ask that the jury be instructed that his failure to testify during the punishment stage of the trial could not be considered as a factor in determining his punishment. Such an instruction is required upon request. *Beathard v. State*, 767 S.W.2d 423, 432 (Tex. Crim. App. 1989). McGuire testified at guilt/innocence, but not at punishment. McGuire suggests that this is error and that the harm caused by the error was magnified when the State made a comment during closing arguments that could bring attention to his failure to testify. The decision to request this instruction is made by counsel. Conceivably, he might not have wanted to seek such an instruction. Further, McGuire had testified at the guilt/innocence phase of the trial and some damage to his credibility had been afflicted on him by the State during cross-examination; trial counsel may have believed it best not to remind the jury of the damaged credibility that McGuire's testimony might have engendered. On the other hand, taking into account the general stricture that what happens at guilt/innocence can be considered at punishment, counsel may have believed that the jury would treat him as having already testified, and thus no instruction to disregard his failure would be helpful.

In the absence of a record to show why trial counsel made no request for the instruction, we cannot conclude that error has been shown.

McGuire further argues that counsel was ineffective because he did not object to the following part of the State's colloquy during final arguments at punishment. The State was

13

questioning Linda Keller, a member of the community supervision department, when the following exchange occurred:

> Q. [By the State] Okay. You've been here in Upshur County for the last two and a half years since I've been the elected DA in Upshur; is that correct?
>
> A. [By Keller] Yes.
>
> Q. We have had, to your knowledge we have had other jury trials like this where people were on trial for aggravated sexual assault of children during that time span, would you agree?
>
> A. Yes.
>
> Q. Are you aware of any prior jury during the last two and a half years that I've been in Upshur County placing someone on probation for aggravated sexual assault of a child?
>
> A. I'm not aware of any, no.
>
> Q. Now I want to talk a little bit about those that have been placed on probation. People have received probation before, correct?
>
> A. Yes.
>
> Q. For this type of offense, correct?
>
> A. Yes.
>
> Q. Have some of those individuals that have received a probated sentence gone out, sought, and completed another sexual assault against another child?
>
> A. Yes, they have.

14

> Q.      That is not uncommon for those placed on supervision for this type of offense, is it?

> A.      No, sir.

The State continued his questioning by discussing reoffenders, the difficulty of changing a pattern of behavior and re-emphasizing the possibility of another child being victimized. On redirect, defense counsel skewered the officer by questioning her about her knowledge of this particular defendant, knowledge which simply did not exist. He then went on to question her about the efficacy of the various programs with some defendants and elicited the answer that for some probationers, the programs worked well.

McGuire argues that the question asking about what other juries had done, with his focus upon how those other juries had refused to recommend community supervision for such an offender is improper on its face. The propriety of the scope of evidence at punishment is set out by Article 37.07, Section 3 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3 (Vernon 2006). The list there is inclusive, and even the stated factors are extremely wide. Even the list, however, discusses the admissibility of evidence about the defendant who is before the court and the case at bar. The testimony is far removed from that area. This is a plea to be as strict as all the other juries in the county have been on this type of prosecution (and in doing so, not consider community supervision).

McGuire's counsel states he has been unable to find any cases on point, and the State has not responded to this issue except by stating that any error is harmless. This type of argument, however,

15

is simply a new twist on an old tactic, which is most easily understood by reference to the underlying, and long-standing, rules governing the type of argument that may be made by a prosecutor as regards the type or amount of punishment advocated by the State.

> [The State may] argue that juries should deter specific crimes by their verdict. The State may also argue the impact of the jury's verdict on the community. The State may not, however, argue that the community or any particular segment of the community expects or demands either a guilty verdict or a particular punishment.

*Borjan v. State*, 787 S.W.2d 53, 55–56 (Tex. Crim. App. 1990) (citations omitted). Reminding a jury of the impact of their verdict on a community differs from telling a jury that the community expects or demands a particular verdict or form of punishment. *Id.* at 56. The former is permissible, while the latter is not. *Id.*; *Harris v. State*, 56 S.W.3d 52, 56 (Tex. App.—Houston [14th Dist.] 2001, pets. ref'd [2 pets.]).

The types of sentences rendered by other juries in facially similar cases is simply not relevant to the determination of punishment in this particular case; no two cases are precisely the same. Again, we can imagine no reason to allow such questioning to go forward without raising an objection. However, once again, there is nothing in this record to indicate why trial counsel did not object or whether he was following some valid trial tactic we cannot now imagine. Being bound by previous rulings of the Texas Court of Criminal Appeals, we conclude that without such a foundation in the record, we cannot conclude that error has been shown.

McGuire next contends that counsel was ineffective in several other respects that he argues collectively show the pattern of ineffective assistance of counsel that would justify reversal. He

16

points out that counsel failed to introduce evidence that he had never been convicted of a felony—thus impacting his ability to obtain community supervision. He also points out, however, that neither the trial judge nor the State realized this, but the option was nonetheless included in the charge.

McGuire also points out that counsel had not shown the recording of his statement made to Warren, suggesting that not doing so was ineffective. He further complains about a sidebar comment made by the State when ending his direct examination of a witness: "I'm going to pass you as a witness and [McGuire's counsel] is going to ask you some questions and I know you'll be truthful with him as you were with me, and I'll pass the witness."

The State's effort to skirt the rules was patently improper, but ultimately successful because defense counsel neither objected to nor otherwise complained about his unwarranted commentary, obviously directed toward bolstering the reputation of his witness. Such sidebar remarks are improper, but as in this case, so quickly and unexpectedly presented that an objection preventing them would be impossible. One trial tactic often employed by some competent trial practitioners is to strictly limit the objections which they lodge, some believing that juries interpret multiple objections by an attorney to be efforts to stonewall the jury or to unnecessarily delay a trial. Whether that theory was followed by McGuire's trial counsel is something which can only be the subject of speculation. However, choosing not to make an objection after the comment was made is clearly the

sort of decision that is tactical in nature; absent a showing that there was no tactical impetus in not having objected, error has not been shown.

McGuire also complains because, during his examination of the witnesses, defense counsel did not emphasize a number of issues, such as the discrepancies between the testimony of different witnesses and the failure of the girl to testify to whom the victim had supposedly sent a text message the night of the incident. Counsel did cross-examine the witnesses who testified and the decisions made about the nature of such examination and arguments are typically tactical in nature. We may not second-guess such decisions.

Finally, McGuire also argues that a conflict in interest existed, as defense counsel had represented the complainant's father in 1999 or 2000 in his divorce. He points to comments by defense counsel that were sympathetic to the father and suggests that they indicated a conflict of interest, presumably that might impinge on counsel's ability to effectively represent a person accused of raping the man's daughter.

That matter was never broached or discussed in any detail, and it is not apparent from the record that any actual harm to McGuire resulted, although the appearance of impropriety is always a concern when an attorney appears in a case in a position somehow opposed to his former client. In criminal cases, however, as the Texas Court of Criminal Appeals has taken quite a relaxed position as to such conflicts where the same case is not involved, we cannot conclude that error has been shown in that connection. *See Landers v. State*, 256 S.W.3d 295 (Tex. Crim. App. 2008).

18

Upon review of the entirety of the conduct, we do not find error, either separately or in combination, that reaches the level of harm required by a *Strickland* analysis to justify reversal.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:    January 8, 2010
Date Decided:    January 29, 2010

Do Not Publish