Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## OPINION

No. 04-10-00075-CR

Albert **MORAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2005CR9104
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  June 8, 2011

AFFIRMED

Albert Moran appeals his convictions for three counts of indecency with a child, each enhanced by two prior felony convictions for possession of a controlled substance. Moran contends he received ineffective assistance of counsel and the trial court erred by restricting his cross-examination of the witnesses. We affirm the judgments.

**BACKGROUND**

Moran is the uncle of the complainant, F.G.[1]  For three or four months when F.G. was a young teen, he spent weekends at Moran's home so F.G. could visit his cousins.  F.G. would go to Moran's house on Friday and return home on Sunday.  Moran was usually the only adult present at the residence.  According to F.G., Moran had improper sexual contact with him on multiple occasions over the course of F.G.'s visits.  F.G. eventually told one of his cousins and his mother about Moran's conduct.  F.G.'s mother notified the police, and Moran was arrested and charged with three counts of indecency with a child.

Moran pled not guilty and proceeded to trial.  A jury found him guilty on all three counts as charged in the indictment.  The trial court found the enhancement paragraphs in the indictment to be true and sentenced Moran to life imprisonment on each count, with the sentences to run concurrently.  Moran did not file a motion for new trial and this appeal followed.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Moran argues his trial counsel rendered ineffective assistance by failing to object to and eliciting opinion testimony from San Antonio Police Detective Lisa Miller about F.G.'s truthfulness and Moran's lack of credibility.  During the State's case in chief, the prosecutor questioned Detective Miller as follows:

> Q.      And then after you talked to all these people, what was your next step in your interview?  I mean, in your investigation.
>
> A.      Based on what [Moran] told me — I don't know how to explain to you.  There were big gaps in [Moran's] statement that he could not — he could not fill in the gaps for me.  He could not provide me details of the things that he was saying.  I did not find him credible; therefore, I went ahead and forwarded the case to the District Attorney's Office believing what [F.G.] had said was more of the truth than what [Moran] said.
>
> . . .

---

[1] To protect the identity of the victim, we will refer to him by his initials only.

> Q.      So based on your experience and based on your investigation in this case, did you find [F.G.] credible?
>
> A.      Yes, I did.  Very much so.

On cross-examination, Moran's trial counsel also questioned Detective Miller about F.G.'s credibility.

> Q.      Okay.  Now, you also mentioned that you always try to get down to the truth.  Have you had cases where people sometimes are not telling the truth and you just disregard those cases?
>
> A.      Yes.
>
> Q.      Okay.  And does that happen once in a while or does it happen on a consistent basis?
>
> A.      It's definitely outside the norm that a child comes in and does not tell the truth.
>
> Q.      But it does happen?
>
> A.      Yes, it does.
>
> Q.      Okay.
>
> A.      However, I've never had it happen with a teenage boy.
>
> . . .
>
> Q.      All right. . . . But, anyway, you just found him credible?
>
> A.      I did.

Moran also complains that his attorney failed to object to Detective Miller's testimony on redirect examination that she "found [F.G.] credible and [Moran] not credible."

To establish ineffective assistance of counsel, a defendant must prove by a preponderance of evidence his trial counsel's performance was deficient and the deficient performance prejudiced him.  *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Bone v. State*, 77 S.W.3d

828, 833 (Tex. Crim. App. 2002). To demonstrate deficient performance, the defendant must show counsel's performance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Our review of defense counsel's representation is "highly deferential" and we presume "counsel's actions fell within the wide range of reasonable and professional assistance." *Bone*, 77 S.W.3d at 833. To overcome this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). When the record contains no evidence of counsel's reasons for the challenged conduct, we "'will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003) (quoting 3 W. LaFave, *et al.*, CRIMINAL PROCEDURE § 11.10(c) (2d ed. 1999)).

A defendant claiming ineffective assistance of counsel must also establish prejudice by showing "a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Failure to prove either deficient performance or prejudice is fatal to any complaint of ineffective assistance. *Strickland*, 466 U.S. at 700.

Moran acknowledges that his trial counsel has not had an opportunity to explain his reasons for the challenged conduct on the record and that the law indulges a strong presumption

in favor of effective representation. However, citing to several cases from our sister courts, Moran contends that his trial counsel's conduct was so outrageous that no competent counsel would have engaged in it. *See Fuller v. State*, 224 S.W.3d 823 (Tex. App.—Texarkana 2007, no pet.); *Sessums v. State*, 129 S.W.3d 242 (Tex. App.—Texarkana 2004, pet. ref'd); *Miller v. State*, 757 S.W.2d 880 (Tex. App.—Dallas 1988, pet. ref'd); *Garcia v. State*, 712 S.W.2d 249 (Tex. App.—El Paso, pet. ref'd). In *Fuller*, the court considered whether trial counsel was ineffective when he failed to object to the testimony of the police detective and a forensic interviewer that the child victim was truthful. *Fuller*, 224 S.W.3d at 834-836. After reviewing its earlier decision in *Sessums* and the opinions in *Miller* and *Garcia*, the court held that "Fuller's counsel's conduct in allowing the State unfettered and unchecked bolstering of the victim was so outrageous that no competent attorney would have engaged in it." *Id.* at 836. Moran essentially argues that there are no circumstances in which allowing a witness to opine on the truthfulness of the complainant in a case where there is no physical or scientific evidence linking the defendant to the crime and credibility of the complainant is the primary issue, might be considered sound trial strategy. We disagree.

Although the record contains no express explanation of Moran's counsel's strategy, a strategy becomes apparent when we examine the record. *See Garcia*, 57 S.W.3d at 440-41 (where record did not contain express reasons for counsel's conduct, court reviewed record, speculated what counsel's strategy might have been, and determined whether under the circumstances it might have been a sound trial strategy). F.G., the State's first witness, testified in detail about six or seven specific instances of sexual contact between him and Moran. However, in the written statement he gave Detective Miller more than four years before trial, F.G. provided details of only one incident of sexual contact, although he also stated it happened

every time he went to the defendant's house. Moran's trial counsel vigorously cross-examined F.G. about the lack of details in the written statement and contrasted it with the many details provided four years later at trial. F.G.'s explanation was that he had "blacked out" the events from his mind when he gave his written statement, but remembered the details after talking with the prosecutor just before trial. It was with this background that counsel allowed the State to elicit the testimony from Detective Miller that she believed F.G. to be credible and Moran not credible.

During Moran's attorney's cross-examination, Detective Miller testified she found Moran not credible because Moran could not provide details to support some of the things he told her. The cross-examination highlighted the inconsistency in Detective Miller's testimony: she did not believe Moran because he provided insufficient detail during his interview, yet she found F.G. to be credible in spite of the lack of detail in his statement. Moreover, counsel elicited testimony from Detective Miller that she formed her opinion about F.G.'s credibility after talking with him for only a little over an hour. The strategy counsel might have been attempting was to suggest to the jury that that the police accepted F.G.'s word that a crime occurred and failed to properly investigate the claim.

Defense counsel appeared to be using the same strategy in his closing argument when he discussed the testimony of Detective Miller and Dr. Nancy Kellogg.[2] After reminding the jury about the number of people who have been imprisoned but later cleared of the charges, counsel turned to the issue of F.G.'s credibility. He attacked that credibility by reminding the jury that F.G. failed to provide any details in the written statement and by pointing to inconsistencies in his testimony. With respect to Dr. Kellogg, defense counsel argued:

---

[2] Dr. Kellogg is a pediatrician who testified about her examination of F.G. and her experience with children who have reported sexual abuse.

Now, let me real quickly go over — go over why I didn't ask Dr. Kellogg any questions? [sic] She's done 8,000 cases. She's an expert's [sic] witness. And who's she an expert witness for? For the D.A. Who pays her, you know. What do you think I'm going to get out of her? She goes, Oh, no, I've already judged the credibility. Well, let me tell you something. If she's real quick, like, Oh, he's credible. Did you — have you sensed that from [F.G.]? You're not doctors, but did you sense that from [F.G.], that he's credible like that? First time that you heard him, it's — that's it. He's credible. Did you sense that? I venture to say not.

As to Detective Miller's testimony about F.G.'s credibility, the defense counsel argued:

And then, how long were you with him? Oh, about an hour. You have to remember, you introduce yourself, you sit down, tell them how the investigation will go and stuff like that. He gets an hour, right? And she says that immediately she already knew that he was credible. You guys are not detectives, you guys are not experts, but use your common sense. Did you sense that from [F.G.] from the very beginning that he's so credible? Did you? I venture to say not.

Viewing the record as a whole, it appears the strategy Moran's counsel might have employed was to attack the validity and integrity of the police investigation by arguing the police rushed to judgment. Counsel's questioning and argument suggested that by believing F.G. almost immediately, the police failed to critically test his story by exploring other avenues of investigation. Detective Miller's testimony about Moran's and F.G.'s credibility would have played a role in this strategy. Under the circumstances, we cannot say that no competent counsel would have engaged such a strategy. *See Garcia*, 57 S.W.3d at 441. At the very least, the record does not affirmatively demonstrate trial counsel rendered deficient performance. To the extent that *Fuller*, *Sessums*, and *Miller* hold that allowing a witness to opine on the victim's credibility constitutes deficient performance in all circumstances, we disagree.[3] Our holding that Moran has not shown deficient performance is in accordance the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Morales v. State*,

---

[3] It would seem obvious the jury would infer from the simple fact that a trial was taking place that the detective and the prosecutor believed the complainant to be credible. If the detective did not believe the complainant, a reasonable jury would conclude the charges would not have gone forward.

253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

## RESTRICTION OF CROSS-EXAMINATION

Moran also complains the trial court erred in restricting his cross-examination of F.G. and F.G.'s mother about an earlier, unrelated, civil suit and about a threatened civil assault suit.

Before Moran's attorney began cross-examining F.G., he approached the bench and argued he should be able to question F.G. about a civil lawsuit F.G.'s mother filed against Moran because it was evidence of F.G.'s and his mother's "bias" and motive to lie. The suit alleged F.G. burned his arm while playing with gasoline at Moran's house because Moran failed to properly supervise F.G. Initially, Moran argued that F.G.'s mother was angry because she did not obtain as large a settlement as she wanted out of the suit. The State questioned how a lawsuit that was filed two years after the outcry could provide a motive to fabricate the earlier charges. The court ruled that Moran had not shown the relevance of the line of questioning and that it would not allow it at that time.

During a break in F.G.'s cross-examination, Moran's attorney elaborated on his argument. He told the court that F.G. was burned in April 2005, and that F.G.'s mother hired an attorney to pursue that claim a short time afterward. The outcry of abuse was not made until later, in July 2005. Counsel stated F.G.'s mother wanted Moran to make an insurance claim and threatened to sue him, and only later was the outcry of abuse made. Counsel appears to have been contending that the evidence would raise the possibility the abuse charges were fabricated in order to coerce more money out of Moran or his insurer. Counsel stated he intended to call the civil attorney to establish some of these facts and wanted to reserve the right to recall F.G. later. The court responded, "that's fine."

Moran's attorney did not attempt to question either F.G. or F.G.'s mother about any of these matters during the State's case-in-chief, nor did he call the attorney to testify. At a bench conference during the defense's case, Moran's counsel advised the court the civil attorney had appeared in response to a subpoena, but that the attorney stated he would testify he did not remember when he was hired. Moran did not call the attorney to testify.

After the State rested, Moran's attorney advised the court he would call Moran's daughter Evie Tijerina to testify, and wanted to question her about the lawsuit. During testimony outside the presence of the jury, Tijerina stated that F.G.'s mother began demanding money from Moran shortly after F.G. was burned. Moran directed her to his insurance company, which paid her $16,000 in settlement. Moran's counsel also questioned Tijerina at the bench about the second civil suit. She responded that it was "common knowledge" that F.G.'s mother was waiting to file a second lawsuit against Moran, based on the outcome of the criminal trial. However, Tijerina admitted she had no personal knowledge about this threatened suit. Counsel also asserted he had received an e-mail from the civil attorney stating he intended to sue Moran for sexual assault when the criminal trial was over.

Arguing that Tijerina should be allowed to testify about both the burn lawsuit and the threatened civil suit, defense counsel stated to the court:

> So to me, that all builds up that this is the plan. If there was no plan like that, if there was none, then why is the attorney leaving me those kind [sic] of emails, messages, if he had no intentions of it? My concern is that it clearly shows that these people had a motive or a bias. They have a bias to testify the way they're going to testify. They clearly have a motive because it has to do with money. Okay. Now, the jury can decipher that one way or other, but I think they're entitled to hear it.

In response, the prosecutor argued:

> There's been no evidence as far as any of what Defense Counsel claims. No evidence whatsoever. Our claim is that the demand for money to pay for the

burns is not relevant to this cause. Moreover, that demand for money was met by the Defendant, so that issue was dealt with. The issue regarding this contributes to the motive for the family to lie. I still have not heard some form or articulative [sic] response as to how this contributes to motive. So given those reasons, and given the fact that this particular witness we just heard from has no personal knowledge about any lawsuit, never spoke to [F.G.'s mother], never went to an attorneys law firm, there's no evidence to support any of these claims. So as a result, we're going to ask that you grant our motion in limine.

The court ruled the evidence from Tijerina would not be admitted:

All right. I'm not going to allow the testimony with regard to what this witness thinks she may know about pending lawsuits because it's largely — entirely, really, based on hearsay, and some mention of getting something in the mail without her quite even knowing what it was. So my concern is to allow the kind of testimony that we got from her has very little probative value and just an enormous potential to confound and confuse the jury. And so I'm not going to allow it.

On appeal, Moran argues the trial court abused its discretion by not allowing him to question F.G. and his mother about the "burn" lawsuit and the threatened sexual assault suit. "A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias or interest for the witness to testify." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). A trial court may violate the Confrontation Clause if it unreasonably limits inquiry into the potential biases of prosecution witnesses. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). However, the trial court has broad discretion to impose reasonable **limits** on **cross-examination without running afoul of the Confrontation Clause in order** to avoid harassment, prejudice, confusion of the issues, endangering the witness, or the injection of cumulative, collateral, or marginally relevant evidence. *Id*. at 679; *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).

The trial court plainly considered the "burn" lawsuit was at best marginally relevant to demonstrate bias on the part of F.G. or his mother. That suit was completely unrelated to the criminal charges on trial. Moreover, the suit was settled before the criminal trial began and F.G.

received monetary compensation for his injuries. Despite numerous opportunities, trial counsel did not articulate for the trial court any causal connection or logical relationship between the previous civil lawsuit and the witnesses' testimony at trial. *See Carpenter v. State*, 979 S.W.2d 633, 635 (Tex. Crim. App. 1998). Accordingly, we hold the trial court did not abuse its discretion in limiting the cross-examination about the previous civil suit.

Moran correctly asserts that a defendant is entitled to "show that the complaining witness has brought a civil suit for damages based on the same occurrence for which the defendant is being prosecuted." *Deloney v. State*, 734 S.W.2d 6, 9 (Tex. App.—Dallas 1987, pet. ref'd) (citing *Blake v. State*, 365 S.W.2d 795, 796 (Tex. Crim. App. 1963)). However, Moran did not attempt to cross-examine F.G. or his mother, either before the jury or in a hearing outside the presence of the jury, about their intent to file a sexual assault suit. Moreover, Moran did not proffer any competent evidence that they intended to file such a suit. The only evidence before the court about the threatened suit was the proffered hearsay testimony of Tijerina and the hearsay representations of Moran's counsel based on an email he received from an attorney. Moran did not call the attorney to testify. The trial court reasonably could have concluded Moran did not establish a sufficient basis for allowing cross-examination on this issue.

Based on the record before us, we cannot conclude the trial court abused its discretion by restricting the cross-examination of F.G. or his mother.

The judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

PUBLISH