PD-0395-16
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/30/2016 11:17:45 AM
Accepted 6/1/2016 3:24:14 PM
ABEL ACOSTA
CLERK

**PD 0395-16**

## IN THE COURT OF CRIMINAL APPEALS

### OF TEXAS

_____

**CARL DION LOVINGS,**
*Appellant*,

**v.**

**THE STATE OF TEXAS,**
*Appellee.*

_____

On Petition for Discretionary Review from the
Fourteenth Court of Appeals in No. 14-15-00167-CR
affirming the conviction in cause number 1419029
From the 177th District Court of Harris County, Texas

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

_____

ORAL ARGUMENT REQUESTED

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**JANI MASELLI WOOD**
Assistant Public Defender
Harris County, Texas
TBN. 00791195
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
Counsel for Appellant
May 29, 2016

FILED IN
COURT OF CRIMINAL APPEALS

June 1, 2016

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

Appellant:                                                Carl Dion Lovings
TDCJ-ID# 01984211
Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886

Trial Prosecutor:                           Cheryl Ann Williamson
Nick Socias

Appellate Prosecutor                 Carly Dessauer
Assistant District Attorneys
Harris County, Texas
1201 Franklin, 6th Floor
Houston, Texas 77002

Defense Counsel at Trial:          Gary Polland
2211 Norfolk Street, Suite 920
Houston, TX 77098

Presiding Judge:                       Hon.Ryan Patrick
177th District Court
Harris County, Texas
1201 Franklin, 19th floor
Houston, Texas 77002

Defense Counsel on Appeal:       Jani Maselli Wood
Assistant Public Defender
Harris County, Texas
1201 Franklin, 13th Floor
Houston, Texas 77002

Table of Contents

Identity of Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statement of Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Ground for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Reason for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Statement of Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     Credibility of the complainant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     Discussion of "medical records" during closing argument by the State:. . . 10

Argument.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     Ground One: This was a one witness trial. The only evidence to support the conviction was offered through inadmissible hearsay and an inadmissible credibility determination from the police officer. Without that evidence, there was no other evidence to convict. The trial attorney improperly objected to the credibility determination and wholly failed to object to the "medical" evidence offered. Did the Court of Appeals err in determining Mr. Lovings received effective assistance of counsel?
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     The Court of Appeals agrees the evidence was inadmissible.. . . . . . . . . . . . 13
     The Court of Appeals misapplied precedent from this Court.. . . . . . . . . . 13
     The credibility determination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     Mr. Lovings was egregiously harmed by this testimony.. . . . . . . . . . . . . . 17

The Court of Appeals erred in determining Mr. Lovings was effectively represented - there can be no confidence in this verdict.. . . . . . . . . . . . . . 18

Prayer for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

INDEX OF AUTHORITIES

PAGE

**Cases**:

*Andrews v. State*,
159 S.W.3d 98, 102 (Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . . 13, 14

*Ayala v. State*,
352 S.W.2d 955 (Tex. Crim. App. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cannon v. State*,
668 S.W.2d 401 (Tex.Crim.App.1984). . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fuller v. State*,
224 S.W.2d 823 (Tex. App. – Texarkana 2007, no pet.) . . . . . . . . . . . . . . 17

*Lovings v. State*,
14-15-00167-CR, 2016 WL 1237875
(Tex. App.—Houston [14th Dist.] Mar. 29, 2016, no. pet. h.). . . . . . . passim

*Reynolds v. State*,
227 S.W.3d 355 (Tex. App – Texarkana 2007, no pet.) . . . . . . . . . . . . . . 17

*Schutz v. State*,
63 S.W.3d 442 (Tex. Crim. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Thompson v. State*,
9 S.W.3d 808 (Tex. Crim. App. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Yount v. State*,
872 S.W.2d 706 (Tex. Crim. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Rules and Statutes**

TEX. R. EVID. 608(A)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. R. APP. P. 66.3(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested. While this Court has routinely held that ineffective assistance of counsel is an issue better suited to habeas, nonetheless, this Court has never held that it cannot be considered on direct review. Furthermore, this Court has held that in the face of absolutely no strategy at all, a claim of ineffective assistance of counsel will be sustained. This is such a case.

STATEMENT OF THE CASE

This is an appeal from the offense of aggravated assault/family member. (C.R. at 158). Mr. Lovings pleaded not guilty and a jury convicted him. (C.R. at 156). The court sentenced Mr. Lovings to 33 years confinement in the Institutional Division of the Texas Department of Criminal Justice. (C.R. at 158). Timely notice of appeal was filed. (C.R. at 162).

STATEMENT OF THE PROCEDURAL HISTORY

In an unpublished opinion, the Fourteenth Court of Appeals affirmed Mr. Loving's conviction. *Lovings v. State*, 14-15-00167-CR, 2016 WL 1237875, at *1 (Tex. App.—Houston [14th Dist.] Mar. 29, 2016, no. pet. h.). No motion for rehearing was filed. After an extension of time, this petition is timely if filed on or before May 30, 2016.

## GROUND FOR REVIEW

Ground One: This was a one witness trial. The only evidence to support the conviction was offered through inadmissible hearsay and an inadmissible credibility determination from the police officer. Without that evidence, there was no other evidence to convict. The trial attorney improperly objected to the credibility determination and wholly failed to object to the "medical" evidence offered. Did the Court of Appeals err in determining Mr. Lovings received effective assistance of counsel?

## REASON FOR REVIEW

The Fourteenth Court of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals. TEX. R. APP. P. 66.3(c).

STATEMENT OF FACTS RELATIVE TO GROUND RAISED

The State presented one witness - Houston Police Officer Mark Contreras. (3 R.R. at 7). He received a call and responded to a disturbance. (3 R.R. at 11). When he arrived at the Latanya Peterson's (the complainant) house, she was upset and frazzled, and asking for help. (3 R.R. at 11). She told the officer her husband had beaten her. (3 R.R. at 13-14, 27). She was bleeding from a couple different spots on her body and had a cut finger and one above her eye. (3 R.R. at 15). Officer Contreras found a pool of blood and a baseball bat. (3 R.R. at 15). She appeared to be in pain and was transported to the hospital. (3 R.R. at 16).

The defense made no objection to the medical records. (3 R.R. at 31, SX-13). The State also admitted the 9-1-1 call. (3 R.R. at 37). Although in the 9-1-1 call, the complainant mentioned a knife, but none was ever found. (3 R.R. at 37). Officer Contreras did concede that he did not know what the complainant looked like before the incident. (3 R.R. at 39-40).

*Credibility of the complainant*

In the first instance where no ruling was received, Officer Contreras was asked:

Q (State)      "Is it a part of your job or your duties to determine credibility of witnesses?

A:      Yes, ma'am, it is.

Q:      Why is that?

-9-

A:     You never want to file a charge against someone if they're being accused of the crime if you don't believe that the person or persons that are witness against them are telling the truth.

Ms. Williamson (this is probably in error and meant Defense Counsel) Judge, I object to that. That invades the province of the fact finder as to credibility of witnesses.

The Court:   Let's move on.

(3 R.R. at 10-11).

Later in his testimony, Officer Contreras was asked:

Q:     Did you find Latanya Peterson to be credible that night?

A:     I did.

(3 R.R. at 18).

During closing argument, the State argued without objection:

I don't care what he has to say or think about why she didn't walk through those doors today because the evidence brought to you is from that stand. It's what that officer said she told him that night. It's the officer saying he found her credible.

(3 R.R. at 57).

*Discussion of "medical records" during closing argument by the State*:

These are the medical records. Now you can look at this in more detail. ... Something you haven't read yet, feel free to, it's in evidence.
                              * * * *
Patient states, "Today I came home from church a little after 2:00. I was check[ing] my Facebook to see if my husband was still my friend on his page. "I see this hoe of a wife of mine, bitches and hoes, Bitch you ain't

shit.' All kinds of names. I told him if he don't want me, just leave. He said he wouldn't leave until he got the papers, divorce papers.

He came back to the room where I was watching television. I told him he couldn't watch TV and to go to his aunt's house. He said, "Bitch, I ain't going to leave until you give me the papers. I got up to walk out of the room. He pushed me so hard that he pushed me to the wall across the room. I said, "I don't want to fight.' I went to the closet. He pulled my hair off. It was glued to my head. The first time he hit me, points to left forehead, he called his mom and put it on the speaker phone and said he was going to the penitentiary because I'm going to kill this bitch. He punched me in the closet. I fell on my knees. He put me on the floor. He was on my back. He grabbed my neck. 'Bitch, I'll break your fucking neck.'

(C.R. at 57-58).

On direct appeal, Mr. Lovings argued the bolded statements from the State's closing argument were inadmissible hearsay:

Patient states, "**Today I came home from church a little after 2:00. I was check my Facebook to see if my husband was still my friend on his page**. **"I see this hoe of a wife of mine, bitches and hoes, Bitch you ain't shit.' All kinds of names. I told him if he don't want me, just leave. He said he wouldn't leave until he got the papers, divorce papers.**

**He came back to the room where I was watching television. I told him he couldn't watch TV and to go to his aunt's house. He said, "Bitch, I ain't going to leave until you give me the papers. I got up to walk out of the room.** He pushed me so hard that he pushed me to the wall across the room. **I said, "I don't want to fight.' I went to the closet.** He pulled my hair off. It was glued to my head. The first time he hit me, points to left forehead, **he called his mom and put it on the speaker phone and said he was going to the penitentiary because I'm going to kill this bitch.** He punched me in the closet. I fell on my knees. He put me on the floor. He was on my back. He grabbed my neck**. 'Bitch, I'll break your fucking neck.'**

(C.R. at 57-58).

## ARGUMENT

Ground One: This was a one witness trial. The only evidence to support the conviction was offered through inadmissible hearsay and an inadmissible credibility determination from the police officer. Without that evidence, there was no other evidence to convict. The trial attorney improperly objected to the credibility determination and wholly failed to object to the "medical" evidence offered. Did the Court of Appeals err in determining Mr. Lovings received effective assistance of counsel?

The Court of Appeals held that Mr. Lovings' representation was constitutionally sufficient:

> Appellant argues the bolded statements do not fall under the medical-diagnosis-or-treatment hearsay exception because they were not pertinent to Peterson's diagnosis or treatment. The Court of Criminal Appeals reached the same conclusion under similar fact patterns. *Taylor v. State*, 268 S.W.3d 571, 590–91 (Tex.Crim.App.2008) (victim's statement to therapist identifying appellant as her rapist was not pertinent to medical diagnosis or treatment); *Hassell v. State*, 607 S.W.2d 529, 531 (Tex.Crim.App. [Panel Op.] 1980) (child's statement to doctor that her mother hit her with a broom was not pertinent to treatment of her injuries). *Accord Mbugua v. State*, 312 S.W.3d 647, 670–71 (Tex.App.—Houston [1st Dist.] 2009, pet. ref d) ("While the fact that appellant was cut was clearly pertinent to his treatment, the fact that he was injured 'while fighting' and 'following an altercation' was not."). In his reply, appellant also argues the statements emanate from someone "outside the business" and are inadmissible. *Garcia v. State*, 126 S.W.3d 921, 926–27 (Tex.Crim.App.2004).
>
> Assuming the statements were inadmissible hearsay under either theory, we nonetheless conclude appellant has not satisfied his burden to show his lawyer's performance was deficient. The challenged conduct is not "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392; *Garcia*, 57 S.W.3d at 440. Thus, an evidentiary record as to strategy is necessary:

-12-

> We ordinarily need to hear from counsel whether there was a legitimate trial strategy for a certain act or omission. Frequently, we can conceive potential reasonable trial strategies that counsel could have been pursuing. When that is the case, we simply cannot conclude the counsel has performed deficiently.

*Andrews v. State,* 159 S.W.3d 98, 103 (Tex.Crim.App.2005).

*Lovings v. State*, 14-15-00167-CR, 2016 WL 1237875, at *5 (Tex. App.—Houston [14th Dist.] Mar. 29, 2016, no. pet. h.).

*The Court of Appeals agrees the evidence was inadmissible.*

The Court of Appeals determined that the inflammatory medical records, not dealing with any sort of treatment evidence, were inadmissible. *Id.* But then the Court of Appeals goes on to determine that the failure to object was not so outrageously incompetent. *Id.* To support that holding, the Court of Appeals recounts this Court's decision in *Andrews.* *Id.*

*The Court of Appeals misapplied precedent from this Court.*

The Court of Appeals only stated part of the holding of *Andrews.* This Court determined from an appellate record alone that a reviewing court can determine there was no strategy for an attorney's decision:

> As a result, we have said that the record on direct appeal is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance and that the better course is to pursue the claim in habeas proceedings. But, when no reasonable trial strategy could justify the trial counsel's conduct,

counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did. (Footnotes omitted).

*Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). This Court went on further to explain the mandate of representation contemplated by the Sixth Amendment:

> To satisfy the second prong of the *Strickland test*, we do not require that the appellant show that there would have been a different result if counsel's performance had not been deficient. The defendant must show only that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Footnotes omitted).

*Andrews*, 159 S.W.3d at 102. Due to the scant evidence for conviction, there is no confidence in this verdict.

Mr. Lovings bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim.App.1984). A single error can result in a finding of ineffective assistance of counsel:

> However, while this Court has been hesitant to "designate any error as per se ineffective assistance of counsel as a matter of law," it is possible that a single egregious error of omission or commission by appellant's counsel constitutes ineffective assistance. *Jackson v. State*, 766 S.W.2d 504, 508 (Tex.Crim.App.1985) (failure of trial counsel to advise appellant that judge should assess punishment amounted to ineffective assistance of counsel) (modified on other grounds on remand from U.S.

-14-

Supreme Court, *Jackson v. State*, 766 S.W.2d 518 (Tex.Crim.App.1988)). *See also Ex parte Felton*, 815 S.W.2d at 735 (failure to challenge a void prior conviction used to enhance punishment rendered counsel ineffective). This position finds support in opinions of the United States Supreme Court, which has also held that a single egregious error can sufficiently demonstrate ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)...

*Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Mr. Lovings has presented such an error.

*The credibility determination*

The Court of Appeals detailed the colloquy between the State and the sole witness, Officer Contreras:

The following exchange occurred early in the testimony:

The State: Is it a part of your job to or your duties to determine credibility of witnesses?

Contreras: Yes, ma'am, it is.

The State: Why is that?

Contreras: You never want to file a charge against someone if they're being accused of the crime if you don't believe that the person or persons that are witness against them are telling the truth.

Appellant's counsel: Judge, I object. That invades the province of the fact finder as to the credibility of witnesses.

Court: Let's move on.

Later, the State asked Contreras about Peterson specifically:

-15-

The State: Did you find LaTanya Peterson to be credible that night?

Contreras: I did.

The State: I may have already asked this, but why? Why did you find her credible that night?

Appellant's counsel: That's been asked and answered.

The Court: Sustained.

*Lovings*, 2016 WL 1237875, at *3.

The Court of Appeals determined that failing to get an adverse ruling (thereby foreclosing appellate review) could have been a strategy:

> Later, as quoted above, he objected to Contreras' testimony about why he considers the credibility of a complainant generally. The trial court said, "Let's move on." Based on that instruction, appellant's lawyer could reasonably have inferred the trial court would overrule an objection to testimony about Peterson's credibility, and therefore may have strategized not to object again.

*Lovings*, 2016 WL 1237875, at *3.

In *Schutz v. State*, 957 S.W.2d 52 (Tex. Crim. App. 1997), this Court considered the scope of an expert's testimony on the truthfulness of a child-witness. One salient quote the Court chose to highlight was:

> Asking a witness whether another witness is lying is certainly more prejudicial than asking whether another witness is simply mistaken. In both situations however, the questioning is designed to elicit testimony in the form of one witness' opinion as to the credibility or veracity of another witness, a determination which lies solely within the province of the jury.

*Schutz*, 957 S.W.2d at 67-68. The opinion of Officer Contreras was impermissible.

It is well-settled that a witness may not give an opinion concerning the truth or falsity of another witness's testimony. *Ayala v. State,* 352 S.W.2d 955, 956 (Tex. Crim. App. 1962). "Nonexpert testimony may be offered to support the credibility of a witness in the form of opinion or reputation, but 'the evidence may refer only to character for truthfulness or untruthfulness.'" *Fuller v. State*, 224 S.W.2d 823, 833 (Tex. App. – Texarkana 2007, no pet.) *citing* TEX. R. EVID. 608(A)(1). The Courts have uniformly held that this type of evidence is inadmissible "because it does more than 'assist the trier of fact to understand the evidence or to determine a fact issue in the case'; it *decides* an issue *for* the jury.'" (emphasis in the original) *Reynolds v. State*, 227 S.W.3d 355, 365-66 (Tex. App – Texarkana 2007, no pet.) *citing Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993).

*Mr. Lovings was egregiously harmed by this testimony.*

This conviction had scant evidence to support it. The complainant did not testify, leaving the entire case to rest upon Officer Contreras. The State chose to impermissibly bolster their case asking whether the complainant was credible.

-17-

*The Court of Appeals erred in determining Mr. Lovings was effectively represented - there can be no confidence in this verdict.*

The State's closing argument consisted of two themes. First, the officer found the complainant credible - "It's the officer saying he found her credible." (3 R.R. at 57).

Second, inadmissible evidence from the medical records.

> Patient states, "**Today I came home from church a little after 2:00. I was check my Facebook to see if my husband was still my friend on his page**. **"I see this hoe of a wife of mine, bitches and hoes, Bitch you ain't shit.' All kinds of names. I told him if he don't want me, just leave. He said he wouldn't leave until he got the papers, divorce papers.**
> **He came back to the room where I was watching television. I told him he couldn't watch TV and to go to his aunt's house. He said, "Bitch, I ain't going to leave until you give me the papers. I got up to walk out of the room.** He pushed me so hard that he pushed me to the wall across the room. **I said, "I don't want to fight.' I went to the closet.** He pulled my hair off. It was glued to my head. The first time he hit me, points to left forehead, **he called his mom and put it on the speaker phone and said he was going to the penitentiary because I'm going to kill this bitch.** He punched me in the closet. I fell on my knees. He put me on the floor. He was on my back. He grabbed my neck**. 'Bitch, I'll break your fucking neck.'**

(C.R. at 57-58).

Two egregious errors by defense counsel occurred - singularly each should result in reversal. But in a case with such slim evidence, this is not a verdict worthy of confidence. The Court of Appeals erred in so holding. This petition should be granted.

-18-

PRAYER FOR RELIEF

For the reasons stated above, Mr. Lovings prays that this Court grant his petition for discretionary review.

Respectfully submitted,
**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

*Jani Maselli Wood*

_____

JANI J. MASELLI WOOD
Assistant Public Defender
Harris County, Texas
Jani.Maselli@pdo.hctx.net
TBN. 00791195
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278

Attorney for Appellant
Carl Dion Lovings

CERTIFICATE OF SERVICE

Pursuant to TEX. R. APP. PROC. 9.5, this certifies that on May 30, 2016, a copy

of the foregoing was emailed to Lisa McMinn, State Prosecuting Attorney, and the

Harris County District Attorney's Office through texfile.com at the following address:

Carly Dessauer
Assistant District Attorney
1201 Franklin Street, 6th Floor
Houston, TX 77002
Dessauer_Carly@dao.hctx.net

Lisa McMinn
Lisa.McMinn@SPA.texas.gov

*Jani Maselli Wood*

_____
JANI J. MASELLI WOOD

## CERTIFICATE OF COMPLIANCE

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this petition complies with the type-volume limitations of TEX. R. APP. PROC. 9.4(I)(2)(D).

1.     Exclusive of the portions exempted by TEX. R. APP. PROC. 9.4 (I)(1), this petition contains 3022 words printed in a proportionally spaced typeface.

2.     This petition is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 14 point font in footnotes produced by Corel WordPerfect software.

3.     Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j)*, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

*Jani Maselli Wood*

_____

JANI J. MASELLI WOOD

**Appendix A**
Opinion *Bowden v. State*

2016 WL 1237875
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

DO NOT PUBLISH—TEX.R.APP. P. 47.2(B).

Court of Appeals of Texas,
Houston (14th Dist.).

Carl Dion Lovings, Appellant
v.
The State of Texas, Appellee
NO. 14-15-00167-CR

|

Memorandum Opinion filed March 29, 2016

On Appeal from the 177th District Court, Harris County, Texas, Trial Court Cause No. 1419029

Attorneys and Law Firms

Jani J. Maselli Wood, for Appellant.

Devon Anderson, Carly Dessauer, for Appellee.
Panel consists of Justices Christopher, McCally, and Busby.

MEMORANDUM OPINION

Tracy Christopher, Justice

*1 A jury found Carl Dion Lovings guilty of aggravated assault of a family member. The offense was enhanced by two felony convictions. The trial court sentenced him to thirty-three years' imprisonment. In two issues, appellant asserts he received ineffective assistance of counsel due to his lawyer's failure to object to (1) testimony regarding the complainant's credibility, and (2) the State's reading of unredacted medical records during closing argument. We affirm.

Background

On February 23, 2014, Officer Mark Contreras of the Houston Police Department was dispatched to the home of LaTanya Peterson, the complainant and appellant's wife. Contreras testified that when he arrived at the house, Peterson was "very upset, crying, [and] frazzled." She immediately said to him, "He beat me. He beat me. He hit me like a dog. I thought he was going to kill me." "He" referred to appellant. She was very upset and feared appellant might still be in the area.

Peterson told Contreras she and appellant had been arguing when appellant slapped her and punched her in the face. She retreated to the master bedroom and tried to close the door as appellant continued to assault her. Unable to close the door, she went into the closet. In response, appellant grabbed an aluminum baseball bat and began striking her. She ran out of the closet, but that enabled appellant to, in Contreras' words, "land a few good blows with the baseball bat." Peterson went back into the closet because appellant could not hit her as hard with the bat when she was in the closet. She tried to block herself from the strikes to her head. Peterson said appellant had bitten her at some point.

Blood was all over the closet floor. Contreras considered that relevant because it supported complainant's account of the assault. He observed many injuries on Peterson that also were consistent with her account. She was bleeding from her lip and the side of her head. Bruises were forming on her arms and legs. She had cuts above her eye and on some of her fingers. She had what looked like a bite mark or deep bruise on her back.

Peterson was treated in a hospital after the assault. Sandra Sanchez, R.N., examined her. Medical records from that treatment were admitted into evidence. One page of the medical records showed drawings of the front and back of a female human body. Sanchez drew marks on the figures to indicate the location of Peterson's injuries and annotated each mark with information about the size, appearance, and nature of the injury. Peterson denied strangulation but said, "He grabbed my neck," and demonstrated how he twisted her head. Sanchez noted Peterson's bloody, red scleras and difficulty breathing.

Eleven photographs of Peterson taken at the hospital were admitted into evidence. Contreras confirmed the photos

accurately depicted the injuries he saw on her. He pointed out a straight-line injury to Peterson's arm and said it was consistent with being hit with a baseball bat. When shown a picture of Peterson's finger in which her fingernail was torn, he said he considered that injury a defensive wound she suffered while using her hands to try to shield her head from appellant's blows with the baseball bat.

*2 The State rested its case after Contreras testified. Appellant did not testily, call witnesses, or offer evidence. Peterson did not attend the trial.

The jury found appellant guilty. At appellant's election, the trial court assessed punishment. Appellant timely appealed.

Analysis

I. Legal standards for ineffective assistance of counsel

We review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington,* 466 U.S. 688 (1984). Under *Strickland,* the defendant must prove (1) his trial counsel's representation was deficient, and (2) the deficient performance was so serious that it deprived him of a fair trial. *Id.* at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. A deficient performance deprives the defendant of a fair trial only if it prejudices the defense. *Id.* at 691–92. To show prejudice, appellant must demonstrate there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. This test is applied to claims arising under both the United States and Texas Constitutions. *Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986).

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that counsel's actions were reasonably professional and motivated by sound trial strategy. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). When the record is silent as to counsel's strategy, we will not conclude the defendant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App.2005); *Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App.2001). Rarely will the trial record contain

sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App.2002). In many cases, the defendant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State,* 226 S.W.3d 425, 430 (Tex.Crim.App.2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State,* 187 S.W.3d 475, 483 (Tex.Crim.App.2006). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of counsel's performance for examination. *See Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990). Moreover, it is not sufficient that the defendant show, with the benefit of hindsight, that counsel's actions or omissions during trial were merely of questionable competence. *See Mata,* 226 S.W.3d at 430. Rather, to establish counsel's acts or omissions were outside the range of professionally competent assistance, the defendant must demonstrate counsel's errors were so serious that he was not functioning as counsel. *See Patrick v. State,* 906 S.W.2d 481, 495 (Tex.Crim.App.1995).

II. Failure to Object to Testimony About Credibility

*3 In his first issue, appellant asserts his lawyer's failure to object to Contreras' testimony about Peterson's credibility was ineffective assistance of counsel.

The following exchange occurred early in the testimony:

The State: Is it a part of your job to or your duties to determine credibility of witnesses?

Contreras: Yes, ma'am, it is.

The State: Why is that?

Contreras: You never want to file a charge against someone if they're being accused of the crime if you don't believe that the person or persons that are witness against them are telling the truth.

Appellant's counsel: Judge, I object. That invades the province of the fact finder as to the credibility of witnesses.

Court: Let's move on.

Later, the State asked Contreras about Peterson specifically:

The State: Did you find LaTanya Peterson to be credible that night?

Contreras: I did.

The State: I may have already asked this, but why? Why did you find her credible that night?

Appellant's counsel: That's been asked and answered.

The Court: Sustained.

Appellant argues Contreras' testimony that Peterson was credible was objectionable because it invaded the province of the jury to determine credibility. He relies on _Schutz v. State,_ 957 S.W.2d 52 (Tex.Crim.App.1997), in which the Court of Criminal Appeals decided that certain expert testimony about the truth of the allegations made by a child complainant in a sexual assault case was inadmissible. A question about a witness' truthfulness " 'is designed to elicit testimony in the form of one witness' opinion as to the credibility or veracity of another witness, a determination which lies solely within the province of the jury.' " _Id._ at 67–68 (quoting _State v. Walden,_ 69 Wash.App. 183, 847 P.2d 956, 959 (1993)). Appellant also cites _Yount v. State,_ 872 S.W.2d 706, 709 (Tex.Crim.App.1993), _Ayala v. State,_ 352 S.W.2d 955, 956 (Tex.Crim.App.1962), and _Fuller v. State,_ 224 S.W.3d 823, 833 (Tex.App.—Texarkana 2007, no pet.).

The record is silent on counsel's strategy regarding an objection, so appellant must establish his lawyer's not objecting to the testimony was "so outrageous that no competent attorney" would not have objected. _Goodspeed,_ 187 S.W.3d at 392; _see also Moran v. State,_ 350 S.W.3d 240, 244 (Tex.App.—San Antonio 2011, no pet.) (rejecting argument and authority implicitly supporting argument that allowing witness to opine on victim's credibility constitutes deficient performance in all circumstances).

Appellant's lawyer lodged several objections in the early part of Contreras' testimony, each of which the trial court sustained. Later, as quoted above, he objected to Contreras' testimony about why he considers the credibility of a complainant generally. The trial court said, "Let's move on." Based on that instruction, appellant's lawyer could reasonably have inferred the trial court would overrule an objection to testimony about Peterson's credibility, and therefore may have strategized not to object again. Despite the reasonableness of that inference and strategy, counsel did object to the State's asking Contreras about Peterson's credibility. He did not object to the first question ("Did you find LaTanya Peterson to be credible that night?"), but he objected to the second—and final—question ("I may have already asked this, but why? Why did you find her credible that night?"). The trial court sustained that objection. Through that objection, appellant's counsel prevented the jury from hearing why Contreras found Peterson credible.

*4 Because appellant has not met his burden to establish deficient performance by his lawyer, we do not reach the question of whether appellant has shown he was prejudiced. _See Strickland,_ 466 U.S. at 697. We overrule appellant's first issue.

III. Failure to Object to Medical Records
Appellant's second issue concerns Peterson's medical records. The medical records were admitted into evidence without objection as business records. Appellant argues certain statements in the quoted records are inadmissible hearsay and asserts he was harmed by his lawyer's failure to seek redaction of those "incredibly damaging" statements, which the State read during closing argument.

Hearsay is an out-of-court statement by a non-testifying declarant offered to prove the truth of the matter asserted. _See_ Tex.R. Evid. 801(d); _West v. State,_ 406 S.W.3d 748, 764 (Tex.App.—Houston [14th Dist.] 2013, pet. ref d). Hearsay is inadmissible unless the statement falls under an exception. _See_ Tex.R. Evid. 802.

One such exception is "[a] statement that (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Tex.R. Evid. 803(4). The medical treatment exception assumes the patient understands the importance of being truthful with health-care providers so as to receive an accurate

diagnosis and treatment. *Burns v. State,* 122 S.W.3d 434, 438 (Tex.App.—Houston [1st Dist.] 2003, pet. ref'd).

Another hearsay exception is business records. Business records are those made and kept in the regular course of business that concern and are made at or near the time of an act, condition, opinion, or diagnosis. *See* Tex.R. Evid. 803(6). It is undisputed that Peterson's medical records are admissible as business records.

However, a business record may contain hearsay statements, known as "hearsay within hearsay." The proponent of the document must establish those hearsay statements are independently admissible. *See* Tex.R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."); *Sanchez v. State,* 354 S.W.3d 476, 485–86 (Tex.Crim.App.2011) ("When hearsay contains hearsay, the Rules of Evidence require that each part of the combined statements be within an exception to the hearsay rule.").

The State read Peterson's description of the assault, as written by Sanchez. The statements appellant asserts are inadmissible hearsay are in bold:

Pt states, "today, I came home from church a little after 2:00. I was checking Facebook to see if my husband was still my friend and on his page, I see 'this ho of a wife of mine, bitches and ho's. Bitch you ain't shit.' All kinds of names. I told him if he don't want me just leave. He said he wouldn't leave until he gets the papers, divorce papers. He came back to the room where I was watching television. I told him he couldn't watch my TV and to go to his aunt's house. He said 'bitch, I ain't going to leave until you give me the papers.' I got up to walk out of the room. He pushed me so hard, he pushed me to the wall across the room. I said 'I don't want to fight.' I went to the closet. He pulled my hair off. It was glued to my head. The first time he hit me here (points to left forehead). He called his mom and put it on speaker phone and said he was going to the penitentiary because 'I'm going to kill this bitch.' He pushed me in the closet. I fell on my knees. He put me on the floor. He was on my back and he grabbed my neck. 'Bitch, I'll break your fucking neck.' He got a baseball bat and hit me. I ran to the bathroom and he hit me again. He bit me (points to back of right shoulder). I said 'why are you hitting me?' I got back in the closet because it was harder for him to swing the bat in the closet. He went to the other side of the bed. I ran to the bathroom to get out the window, but I don't fit through the window. He knocked the door off the hinges. I believe his mom was telling him to just leave because he just left and left his stuff there.

*5 Appellant argues the bolded statements do not fall under the medical-diagnosis-or-treatment hearsay exception because they were not pertinent to Peterson's diagnosis or treatment. The Court of Criminal Appeals reached the same conclusion under similar fact patterns. *Taylor v. State,* 268 S.W.3d 571, 590–91 (Tex.Crim.App.2008) (victim's statement to therapist identifying appellant as her rapist was not pertinent to medical diagnosis or treatment); *Hassell v. State,* 607 S.W.2d 529, 531 (Tex.Crim.App. [Panel Op.] 1980) (child's statement to doctor that her mother hit her with a broom was not pertinent to treatment of her injuries). *Accord Mbugua v. State,* 312 S.W.3d 647, 670–71 (Tex.App.—Houston [1st Dist.] 2009, pet. ref'd) ("While the fact that appellant was cut was clearly pertinent to his treatment, the fact that he was injured 'while fighting' and 'following an altercation' was not."). In his reply, appellant also argues the statements emanate from someone "outside the business" and are inadmissible. *Garcia v. State,* 126 S.W.3d 921, 926–27 (Tex.Crim.App.2004).

Assuming the statements were inadmissible hearsay under either theory, we nonetheless conclude appellant has not satisfied his burden to show his lawyer's performance was deficient. The challenged conduct is not "so outrageous that no competent attorney would have engaged in it." *Goodspeed,* 187 S.W.3d at 392; *Garcia,* 57 S.W.3d at 440. Thus, an evidentiary record as to strategy is necessary:

> We ordinarily need to hear from counsel whether there was a legitimate trial strategy for a certain act or omission. Frequently, we can conceive potential reasonable trial strategies that counsel could have been pursuing. When that is the case, we simply cannot conclude the counsel has performed deficiently.

*Andrews v. State,* 159 S.W.3d 98, 103 (Tex.Crim.App.2005).

Appellant did not file a motion for new trial, so there was no hearing at which a record as to the lawyer's strategy could be developed. *Aldaba v. State,* 382 S.W.3d 424, 431 (Tex.App.—Houston [14th Dist.] 2009, pet. ref'd). Without a record, an affidavit from counsel is almost vital to the success of a claim of ineffective assistance. *Id.* No such affidavit is in the record. We cannot conclude on this silent record that

-27-

counsel's performance was deficient. We overrule appellant's second issue.

### Conclusion

We affirm the judgment of the trial court.

All Citations

Not Reported in S.W.3d, 2016 WL 1237875

---

**End of Document**
© 2016 Thomson Reuters. No claim to original U.S. Government Works.